**Gary K. STOUT for himself and others similarly situated, Plaintiffs,**

v.

**REMETRONIX, INC., et al., Defendants.**

**No. 3:13–CV–26.**

United States District Court,
S.D. Ohio,
Western Division,
at Dayton.

Signed Jan. 17, 2014.

Gregory R. Mansell, Mansell Law LLC, Columbus, OH, for Plaintiffs.

John T. McLandrich, Tami Zupkow Hannon, Mazanec, Raskin, Ryder & Keller Co., LPA, Cleveland, OH, Shawn A. Romer, Mazanec, Raskin & Ryder Co., L.P., Solon, OH, for Defendants.

**ORDER**

MICHAEL J. NEWMAN, United States Magistrate Judge.

Now before the Court is Defendants' motion for a Protective Order (doc. 26), Plaintiffs' memorandum in opposition (doc. 29), and Defendants' reply (doc. 30).[1] Defendants seek to prevent the disclosure of project hour sheets used in pricing their products or, in the alternative, limit discovery to attorneys' eyes only ("AEO"). Doc. 26 at PageID 7978.

## I. FACTS

Plaintiff, James K. Stout, filed this complaint alleging that Defendants, Remetronix, Inc. and TechMed Solutions, Inc., unlawfully failed to pay appropriate minimum wage and overtime compensation to employees who are non-exempt under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio Rev.Code § 4111, *et seq.* Doc. 1 at PageID 5–9. Stout seeks to pursue this case on behalf of himself and all other similarly situated employees as a collective action pursuant to FLSA's opt-in provision.[2] 29 U.S.C. § 216(b); doc. 4. The Court granted conditional class certification on August 9, 2013. Doc. 13. The conditional class consists of all current and former field technicians employed by Defendants who could pursue claims for overtime and wage violations. *Id.* at PageID 7917–18. To date, fifteen Plaintiffs have given consent to opt-in. Docs. 23, 25, 27.

During the course of discovery, Plaintiffs requested information regarding Defendants' pricing of their projects. Doc. 26 at PageID 7978. Defendants objected to the production of project hour sheets arguing, first, that the project hour sheets are irrelevant; and, second, that they contain trade secrets. *Id.*

1. The Court met with counsel for both sides by telephone and established a briefing schedule on November 1, 2013. During the call, counsel for Defendants indicated that they had attempted to resolve the dispute extrajudicially and had discussed the matter with Judge Rose during an earlier telephone conference. The Court accepts this in lieu of the good-faith certification required by Fed.R.Civ.P. 26(c)(1).

2. Stout also pled ERISA and disability discrimination claims on his own behalf. Doc. 1 at PageID 9–13.

Plaintiffs contend the documents contain information related to the amount of time spent by Defendants' field technicians performing on-site work. Therefore, Plaintiffs suggest, the documents are relevant to their FLSA and OMFWSA claims, and merit production. Doc. 29 at PageID 7990–91. With respect to the trade secrets argument, Plaintiffs suggest that a properly drafted Protective Order can reasonably limit the scope and extent of disclosure. *Id.* at PageID 7990–92. Defendants counter that such a Protective Order must be AEO. Doc. 30 at PageID 8000–02.

## II. ANALYSIS

■ Fed.R.Civ.P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Further, "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* This provides the District Court with broad discretion to determine the proper scope of discovery. *See Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 402 (6th Cir.1998).

### A. Relevancy

■ The Court finds fault with Defendants' argument that the project hour sheets are irrelevant to Plaintiffs' claims. The conditional class consists of hourly, non-exempt employees, who seek recovery for unpaid and overtime wages pursuant to FLSA and Ohio law. *Id.* Plaintiffs' complaint alleges that Defendants failed to pay their field technicians for time spent on required administrative tasks after leaving the worksite and time on-site that exceeded a pre-determined number. Doc. 1 at PageID 6. The affidavit of Jonathon Price, a former field technician at Remetronix and opt-in Plaintiff, for example, alleges that he was not compensated for required administrative tasks. Doc. 29–1 at PageID 7994–97. Price provides that he and other field technicians were paid for a pre-determined number of hours per installation, regardless of actual time spent. *Id.* at PageID 7996–97. This time did not account for various offsite administrative tasks he was required to perform, and he was not otherwise permitted to bill for this time. *Id.* The information contained in these documents— namely, the number of hours Defendants allocate to complete an installation—relates directly to Plaintiffs' claims for unpaid wages and/or overtime. Plaintiffs allege that the cap on hours was determined, at least in part, by reference to the project hour sheets. Doc. 29 at PageID 7991. Access to this information is necessary for Plaintiffs to attempt to establish that they were not properly compensated for hours worked.

### B. Trade Secrets

■ In the exercise of its discretion, the Court may, upon a showing of good cause, issue a Protective Order limiting or restricting discovery. Fed.R.Civ.P. 26(c). Specifically, the Court may issue an order "requiring that a trade secret or other confidential . . . commercial information not be revealed or be revealed only in a specified way." Fed. R.Civ.P. 26(c)(1)(G). A Protective Order with an AEO designation serves to limit disclosure of trade secret information to the opposing party's attorneys and expert witnesses only. *See Penn, LLC v. Prosper Bus. Dev. Corp.,* No. 2:10–cv–0993, 2012 WL 5948363, at *4 (S.D.Ohio Nov. 28, 2012).

■ "The burden of establishing good cause for a [P]rotective [O]rder rests with the movant." *Nix v. Sword,* 11 Fed.Appx. 498, 500 (6th Cir.2001). To demonstrate good cause, the movant "must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements." *Id.; see also Nemir v. Mitsubishi Motors Corp.,* 381 F.3d 540, 550 (6th Cir. 2004) (explaining that the party seeking a Protective Order must describe the alleged harm it will suffer with "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements" (quoting *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981))). "The mere presence of 'trade secrets' does not automatically entitle the producing party to an AEO [P]rotective [O]rder. The burden remains on the producing party to show that AEO protection

is warranted." *Penn, LLC*, 2012 WL 5948363, at *4.

■ The party seeking an AEO Protective Order must identify with sufficient particularity the harm it will suffer. "In the business context, such a showing requires 'specific demonstrations of fact, supported where possible by affidavits and concrete examples.'" *Id.* (quoting *Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D.Md.1987)). AEO designation can be justified upon a specific factual showing that "especially sensitive information is at issue or the information is to be provided to a competitor." *United States ex rel. Daugherty v. Bostwick Labs.*, No. 1:08–cv354, 2013 WL 3270355, at *2 (S.D.Ohio June 26, 2013) (quoting *Westbrook v. Charlie Sciara & Son Produce Co.*, No. 07–2657, 2008 WL 839745, at *4 (W.D.Tenn. Mar. 27, 2008)). Courts often examine the following factors in evaluating the need to protect sensitive business information and/or trade secrets from disclosure:

> (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*United States ex rel. McDonough v. Symphony Diagnostic Servs.*, No. 2:08–cv–114, 2013 WL 5467830, at *3 (S.D.Ohio Sept. 30, 2013) (quoting *United States v. Int'l Bus. Machs. Corp.*, 67 F.R.D. 40, 47 (S.D.N.Y.1975)). Finally, courts must balance the needs of the party seeking the information against the potential for harm resulting from disclosure. *Bostwick Labs.*, 2013 WL 3270355, at *2.

■ According to the affidavit of Nicholas Giallanzo, the Vice–President and Chief Operating Officer of Remetronix and TechMed Solutions, the project hour sheets contain estimated hours for the installation of various types of medical equipment. Doc. 26–1 at PageID 7986. This estimate is used by Defendants to provide quotes to potential customers. *Id.* The project hour sheets are maintained by Giallanzo on a password-protected computer, and are only shared with managers when necessary to plan a particular installation. *Id.* These managers are instructed not to share the information, and the sheets have never been distributed to all employees or outside Defendants' companies. *Id.* at PageID 7986–87. If the information is incorporated into customer contracts, the contracts contain confidentiality provisions. *Id.* at PageID 7987. Defendants operate in a competitive market, and their pricing information is not publicly available. *Id.* Giallanzo also identifies five former field technicians who now work for competitors. *Id.* This includes Chad Jones, a former field technician and manager for Defendants, who is now the owner of a direct competitor, Buckeye Medical Solutions. Doc. 30–1 at PageID 8004. Attached to Giallanzo's affidavit is a screenshot of the website for Buckeye Medical Solutions, which indicates that the company operates in the same market as Defendants and lists Jones as a contact. *Id.* at PageID 8005–06.

The Court finds that Defendants have made the sufficient factual showing necessary to support the entry of an AEO Protective Order. *See Bostwick Labs.*, 2013 WL 3270355, at *5–7 (concluding that the moving party made "a specific showing of competitive harm" sufficient to justify the entry of an AEO Protective Order for confidential pricing information). Defendants, through the affidavit of Giallanzo, have demonstrated that the pricing information contained in the project hour sheets is proprietary. As noted, Giallanzo maintains the documents on his password-protected computer, and only on rare occasions does he share them with other employees or businesses. When they are shared, the recipient is instructed not to otherwise disseminate the information. Defendants have also adequately alleged the harm to be suffered from disclosure. Giallanzo describes the market within which Defendants operate as small and highly competitive with several former employees now employed by direct competitors. Doc. 26–1 at PageID 7987; doc 30–1 at PageID 8004. The attachment to Giallanzo's affidavit iden-

**536**

tifies a specific competitor in the market, which employs one of Defendants' former employees. *See Bostwick Labs.*, 2013 WL 3270355, at *4, *6 (identifying a website screenshot as supporting evidence for the finding that the parties were direct competitors). If Defendants' competitors had access to the project hour sheets, Defendants could suffer harm in the market. *See id.* at *6 (focusing on the highly competitive market in which the parties operate, and the high potential for competitive harm resulting from full disclosure, in support of entering an AEO Protective Order for documents containing pricing information). Disclosure of the project hour sheets should thus only occur on an AEO basis.

Upon balancing the competing interests, the Court finds also that disclosure of the project hour sheets will adequately protect the interests of both parties. Although Plaintiffs themselves are not direct competitors of Defendants, several of the current and potential opt-in Plaintiffs are employed by such businesses. Limiting disclosure of the project hour sheets to Plaintiffs' attorneys will adequately and reasonably permit Plaintiffs to pursue their unpaid wage and/or overtime claims while, at the same time, protect Defendants from suffering harm in the market. *See id.* at *5–8 (granting an AEO Protective Order for business and pricing information that would otherwise be disclosed to a competitor).

### III. CONCLUSION

For the reasons stated herein, Defendants' motion for a Protective Order (doc. 26) is **GRANTED IN PART AND DENIED IN PART.** Defendants are **ORDERED** to produce the project hour sheets, but review is limited to Plaintiffs' attorneys' eyes only. The parties are **ORDERED** to enter into a Protective Order encompassing the terms of this Order and submit it to the Court for review on or before **January 30, 2014.** The Court advises counsel for both sides that all such Protective Orders must comply with *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir.1996). The draft Protective Order, in Word format, shall be emailed to: newman_chambers@ohsd.uscourts.gov.

**IT IS SO ORDERED.**