[Cite as *Pietrangelo v. Hudson*, 2019-Ohio-1988.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JAMES E. PIETRANGELO, II,                    :

    Plaintiff-Appellant,                    :

                       No. 107344

    v.                    :

CORRINNE HUDSON,                    :

    Defendant-Appellee.                    :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 23, 2019

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-884279

*Appearances:*

James E. Pietrangelo, II, *pro se.*

Collins, Roche, Utley & Garner, L.L.C., Beverly A. Adams and Kurt D. Anderson, *for appellee.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Plaintiff-appellant James E. Pietrangelo, II was involved in a motor vehicle collision with defendant-appellee Corrinne Hudson. Appearing pro se, Pietrangelo brought a negligence action against Hudson alleging that she

caused injury to his head, neck and back. After learning that Pietrangelo had previously suffered injuries to the same areas for which he now claimed harm, Hudson sought Pietrangelo's prior medical records. Pietrangelo refused to sign the release authorizations which prevented Hudson from obtaining the records. The trial court ordered him to sign the authorizations but Pietrangelo refused to comply and now appeals from that order. For the reasons that follow, we affirm.

{¶ 2} Initially, we note that although it is not part of the record before us, Pietrangelo revealed at oral argument that he is an attorney and is licensed to practice law in Ohio.

{¶ 3} We recognize that pro se litigants are not exempt from the rules of procedure and the law and are generally held to the same standard as other litigants. *Lenard v. Miller*, 8th Dist. Cuyahoga No. 99460, 2013-Ohio-4703, ¶ 19. Nevertheless, in some instances, a court may afford a pro se litigant reasonable latitude. *See, e.g., Robb v. Smallwood*, 165 Ohio App.3d 385, 2005-Ohio-5863, 846 N.E.2d 878, ¶ 5 (4th Dist.). This case is not one of them.

**Procedural and Factual Background**

{¶ 4} During the course of discovery, in response to interrogatories, Pietrangelo admitted that he had injured his head, neck and back prior to the accident with Hudson. "[I]n around 2005" he fell, bruising his head and back

and "in around 2011" he pulled a muscle in his lower back.  In 2014 he was punched in the head.

{¶ 5}  Hudson attempted to obtain Pietrangelo's prior medical records from the time of those injuries.  To that end, she provided Pietrangelo medical release authorizations to sign.  He refused to sign, thus preventing Hudson from discovering the records.  Hudson then moved to compel Pietrangelo to sign the authorizations.

{¶ 6}  Pietrangelo opposed the motion, flatly asserting that the authorizations, which would have released records dating back to 2005, were overly broad and would lead to the discovery of information not causally or historically related to his claims.  However, he provided no factual basis in support of this assertion.  He included no affidavit or other evidence in support of this claim upon which the trial court could have concluded the same. Pietrangelo did not identify any particular record that should have been shielded from discovery.  Moreover, he did not seek a protective order from the court and he did not request that the court conduct an in camera inspection to determine whether a record was exempt from discovery.  He merely refused to comply.

{¶ 7}  Pietrangelo based his opposition to Hudson's motion to compel  on a vague and unsupported assertion that, based on his purported (1) "recall" of

treatment and (2) "review" of records in his possession, signing the authorizations would give Hudson records unrelated to the case.

{¶ 8} The trial court did not immediately rule on the motion. It held the motion in abeyance, stating in a journal entry that it would consider the motion at the settlement conference. The court ordered Hudson to, at that time, "present to the court for its review the actual authorizations which are the subject matter of her motion to compel."

{¶ 9} The trial court's App.R. 9 statement from the settlement conference in relevant part reflects:

> The Defendant sought [a] court order compelling Plaintiff to execute specific medical authorizations which were requested by the Defendant.
>
> The court ordered the Plaintiff to sign the medical authorizations which Counsel for the Defendant was in possession of and which said Counsel handed to the Plaintiff for signature. Plaintiff refused to sign the medical authorizations as ordered by the Court * * *. Immediately thereafter * * * the court issued its order * * * which states: "PLAINTIFF TO SIGN STANDARD MEDICAL AUTHORIZATIONS BY JUNE 22, 2018, OTHERWISE THE CASE WILL BE DISMISSED." The in chambers settlement conference was then adjourned.

{¶ 10} The trial court did not attach or otherwise refer to the medical authorizations in its App.R. 9 statement. Neither party made the authorizations part of the record before the trial court. Moreover, we note that neither party has supplemented the record on appeal with the authorizations.

{¶ 11} Following the settlement conference, Pietrangelo did not seek a protective order or request that the court conduct an in camera inspection of the records. Instead, he maintained his refusal to sign the authorizations and appealed from the trial court's order directing him to do so.

### Law and Analysis

{¶ 12} Pietrangelo raises one assignment of error for our review:

The trial court erred and abused its discretion to the prejudice of plaintiff in implicitly granting defendant's motion to compel medical authorizations and then in ordering, and/or in issuing its June 12, 2019 journal entry/order ordering, "plaintiff to sign standard medical authorizations by June 22, 2018, otherwise the case will be dismissed," in contravention of R.C. 2317.02(B)(3)(a) and without conducting an in camera review, thereby allowing defendant to obtain privileged medical records that were not causally or historically related to his claims.

{¶ 13} In general, courts consider discovery orders to be interlocutory and not immediately appealable. *Gentile v. Duncan*, 2013-Ohio-5540, 5 N.E.3d 100, ¶ 9 (10th Dist.). However, where a trial court orders a party to produce allegedly privileged documents to an opposing party it is a final, appealable order. *Pinnix v. Marc Glassman, Inc.*, 8th Dist. Cuyahoga Nos. 97998 and 97999, 2012-Ohio-3263, ¶ 8. Where a party claims that the discovery dispute involves privileged documents it presents a question of law that we review de novo. *Id.*

{¶ 14} R.C. 2317.02(B)(1) outlines the physician-patient privilege and generally protects medical records from disclosure. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 14.

However, when a patient files a civil action and puts his or her physical or mental condition at issue in the case the privilege generally does not apply. *Wooten v. Westfield Ins. Co.*, 181 Ohio App.3d 59, 62, 2009-Ohio-494, 907 N.E.2d 1219, ¶ 14 (8th Dist.). By filing such an action, the patient waives the physician-patient privilege as to any such communication, including medical records, that are related "causally or historically to physical or mental injuries that are relevant to issues in the medical claim." R.C. 2317.02(B)(3)(a); *Hageman v. S.W. Gen. Health Ctr.*, 8th Dist. Cuyahoga No. 87826, 2006-Ohio-6765, ¶ 22. A party does not waive the privilege for records that are not causally or historically related to the claim. *See Wooten* at ¶ 12, 14.

{¶ 15} Pursuant to Civ.R. 26(B), a party is entitled to obtain discovery regarding any matter relevant to the subject of the litigation so long as it is not privileged. *Pinnix* at ¶ 9. The party opposing a discovery request bears the burden of establishing that the information requested would not reasonably lead to discovery of admissible evidence. *Id.* Moreover, because the physician-patient privilege is a statutory creation and in derogation of the common law, a court must strictly construe it against the party asserting it. *Csonka-Cherney v. Arcelormittal Cleveland, Inc.*, 2014-Ohio-836, 9 N.E.3d 515, ¶ 15 (8th Dist.).

{¶ 16} Civ.R. 26(B)(6)(a) addresses a party seeking to assert a privilege claim:

> When information subject to discovery is withheld on a claim that it is privileged * * * the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

This court has recognized that a party may maintain a claim of privilege in compliance with the Civ.R. 26 by means of a "privilege log." *See, e.g., Pinnix*, 8th Dist. Cuyahoga Nos. 97998 and 97999, 2012-Ohio-3263, at ¶ 16; *see, e.g., Csonka-Cherney* at ¶ 25.

{¶ 17} Civ.R. 26(C) further provides:

> *Upon motion* by any party or by the person from whom discovery is sought, *and for good cause show*, the court in which the action is pending *may* make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense * * *.

(Emphasis added.)

{¶ 18} As noted, the party asserting the privilege bears the burden of showing that the records sought are not causally or historically related to the claims. *Pinnix* at ¶ 11 (noting that in camera inspection of records is not necessary where there is no factual basis establishing need for such a review); *see also Lima Mem. Hosp. v. Almudallal*, 2016-Ohio-5177, 69 N.E.3d 204, ¶ 57 (3d Dist.), citing *Stout v. Remetronix, Inc.*, 298 F.R.D. 531, 534 (S.D.Ohio 2014) ("To demonstrate good cause [for a protective order], the movant must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements.")

{¶ 19} Turning to this case, based on the record before us, it is not entirely clear which medical authorizations the trial court ordered Pietrangelo to sign and the scope those authorizations encompassed. The trial court's App.R. 9 statement of the settlement conference makes clear that Hudson brought certain authorizations to the conference and presented them to Pietrangelo. It is similarly clear that the court ordered Pietrangelo to sign those specific authorizations.

{¶ 20} What is not clear is the contents of those authorizations or how many of them there are. In his appellate brief, Pietrangelo refers to four authorizations, but in his proposed App.R. 9(C) statement he claims there are five. Nevertheless, as Pietrangelo notes, no authorizations were attached to Hudson's motion to compel. Further, and despite Pietrangelo's indication that he was in receipt of the authorizations in question, he did not include them in his opposition to the motion to compel and he failed to otherwise make them part of the record before the trial court.

{¶ 21} Although Pietrangelo did attach certain medical authorizations to his proposed App.R. 9(C) statement, Hudson objected to that proposed statement. And, as previously discussed, the trial court's App.R. 9 statement of proceedings did not specifically identify or incorporate any medical authorization, but instead it merely indicated that the court ordered Pietrangelo to sign "standard" medical authorizations.

{¶ 22} Pietrangelo complains that the medical authorizations are impermissibly overbroad and will lead to the production of records that are not related to his claims, but he did not make them part of the record or provide to us any reason to conclude as much. It is the appellant's duty to ensure that he or she provides this court with all of the information needed to decide an assignment of error. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980), citing *State v. Scaggs*, 53 Ohio St.2d 162, 372 N.E.2d 1355 (1978) ("[A]n appellant bears the burden of showing error by reference to matters in the record."). Pietrangelo failed to do that in this case. For this reason we overrule Pietrangelo's assignment of error.

{¶ 23} Nevertheless, even addressing Pietrangelo's claims and arguments on appeal we find that the trial court did not commit the assigned error. Pietrangelo never sought a protection order from the court and he never requested an in camera inspection of any document. *Compare Wooten*, 181 Ohio App.3d, 2009-Ohio-494, 907 N.E.2d 1219, at ¶ 10 ("[Plaintiff] filed a motion for a protective order seeking not to have to execute the releases proposed by [defendant]."); *compare Csonka-Cherney*, 2014-Ohio-836, 9 N.E.3d 515, at ¶ 6 ("[Plaintiff] moved for an in camera inspection of her medical records 'to determine which, if any, of the requested documents and/or information are relevant and/or discoverable in this matter.'"); *compare Pinnix*, 8th Dist. Cuyahoga Nos. 97998 and 97999, 2012-Ohio-3263, at ¶ 4-6 (plaintiff attempted

to have defendant sign a qualified protective order, supported opposition to motion to compel with affidavit specifically listing multiple instances of care and treatment for conditions not causally or historically related to injuries at issue, and moved for in camera inspection); *compare Groening v. Pitney Bowes, Inc.*, 8th Dist. Cuyahoga No. 91394, 2009-Ohio-357, ¶ 6 (in response to motion to compel, plaintiff filed "motion to strike, or, in the alternative, brief in opposition" and requested in camera review).

{¶ 24} Further, Pietrangelo failed to articulate a factual basis by which the court could have concluded that a record was not properly discoverable. *See Chasteen v. Stone Transport, Inc.*, 6th Dist. Fulton No. F-09-012, 2010-Ohio-1701, ¶ 26 ("[S]omething more than a mere recitation that documents are not causally or historically related to a claimed injury must be set forth by the party claiming privilege before any in camera inspection of the documents is necessary."); *see also State v. Hoop*, 134 Ohio App.3d 627, 639, 731 N.E.2d 1177 (12th Dist.1999), quoting *United States v. Zolin*, 491 U.S. 554, 572, 109 S.Ct. 2619, 2631, 105 L.Ed.2d 469 (1989) ("Before engaging in an in camera review to determine whether privilege is applicable, 'the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person' that in camera review of the materials may reveal evidence establishing an applicable privilege * * *.").

{¶ 25} Instead, Pietrangelo merely refused to sign the authorizations: first after Hudson submitted them to him and then again after the court ordered him to do so. Although he did oppose Hudson's motion to compel, he failed to articulate a basis by which the court could have justified preventing discovery of any record. *See, e.g., Pinnix* at ¶ 14 ("[Plaintiff] submitted an affidavit * * * stat[ing] she received medical care * * * for multiple conditions, including gynecological care, which were unrelated to her back injury [she alleged in complaint]. As such, [plaintiff] set forth a reasonable factual basis to establish that the medical records include privileged information that are not causally or historically related to the injuries at issue * * *."). Here, Pietrangelo gave the trial court no basis to conclude that Hudson's authorizations would lead to discovery of unrelated material.

{¶ 26} With respect to Pietrangelo's assertion that the authorizations are overly broad, Pietrangelo admitted relevant injuries dating back to 2005, the same year from which he complains Hudson seeks records. Beyond that, we note that in his complaint, Pietrangelo alleged a broad range of injury including "shock, pain, and suffering," arguably putting both his physical and mental health at issue in the case.

{¶ 27} Finally, to the extent Pietrangelo complains that Hudson did not make the authorizations part of the record herself, she was under no obligation to do so. Hudson bears no responsibility to convince the court that a privilege

applies to the records she is seeking. Convincing the court that a privilege applies to his records is Pietrangelo's burden. *See Pinnix,* 8th Dist. Cuyahoga Nos. 97998 and 97999, 2012-Ohio-3263, at ¶ 9. We overrule the assignment of error.

{¶ 28} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

SEAN C. GALLAGHER, P.J., and
ANITA LASTER MAYS, J., CONCUR