[Cite as *Coon v. OhioHealth Corp.*, 2023-Ohio-492.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

RICHARD COON, ADMINISTRATOR OF
THE ESTATE OF BIANCA COON, DECEASED,

      PLAINTIFF-APPELLEE,

                                    CASE NO. 9-22-41

      v.

OHIOHEALTH CORP, ET AL.,

      DEFENDANTS-APPELLANTS,
      -and-

                                 **O P I N I O N**

VEERA CHANDRA SEKLAR
VEERLA, M.D., ET AL.,

      DEFENDANTS-APPELLEES.

---

Appeal from Marion County Common Pleas Court
Trial Court No. 2020 CV 379

**Judgment Affirmed**

Date of Decision: February 21, 2023

---

APPEARANCES:

    *Michael R. Traven* **for Appellants**

    *John A. Lancione, Paul W. Flowers and Melissa A. Ghrist* **for**
        **Appellee, Bianca Coon Estate**

Case No. 9-22-41

**ZIMMERMAN, J.**

**{¶1}** Defendants-appellants, OhioHealth Corporation ("OhioHealth") and Marion General Hospital (collectively, "defendants"), appeal the judgment of the Marion County Court of Common Pleas denying their motion for a protective order under Civ.R. 26(C). For the reasons that follow, we affirm.

**{¶2}** This case stems from the December 27, 2019 death of Bianca Coon ("Bianca") following her outpatient surgery by the defendants (and the other parties named in plaintiff-appellee's complaints). Importantly, this case involves the discovery of records pertaining to OhioHealth's—a not-for-profit healthcare system in Central Ohio—policies and procedures and medical-staff bylaws as they existed in 2019.

**{¶3}** On December 3, 2020, plaintiff-appellee, Richard Coon ("Richard"), administrator of the estate of Bianca, filed a complaint in the trial court alleging claims for wrongful death and survivorship against the defendants, along with Marion Area Physicians, LLC ("Marion Physicians") and Rebecca Crockett, D.O ("Dr. Crockett"). On December 28, 2020, the defendants, Marion Physicians, and Dr. Crockett filed their answer.

**{¶4}** On April 5, 2021, Richard filed an amended complaint against the defendants, Marion Physicians, and Dr. Crockett as well as including additional defendants: Aditi S. Girme, M.D. ("Dr. Girme"), Veera Chandra Seklar Veerla

-2-

M.D. ("Dr. Veerla"), Shawn Thomas Cuevas, D.O. ("Dr. Cuevas"), and Chasidy R. Crist, CNP ("Crist"). The defendants, Marion Physicians, Crist, and Drs. Crockett and Cuevas filed their answer to Richard's amended complaint on April 7 and Drs. Girme and Veerla filed their answer to Richard's amended complaint on May 25, 2021, respectively.

{¶5} On September 8, 2021, Richard filed a second amended complaint against the defendants, Marion Physicians, Crist, and Drs. Crockett, Cuevas, Girme, and Veerla, and naming as defendants: Access Medical Group, LLC ("Access Medical"), Andrea Ciola, R.N. ("Ciola"), Wendy Tevis, R.N. ("Tevis"), Cassi Babcock, R.N. ("Babcock"), and Marinah Edwards, PSA ("Edwards"). The defendants, along with Marion Physicians, Drs. Crockett and Cuevas, Crist, Ciola, Tevis, Babcock, and Edwards filed their answer to Richard's second amended complaint on September 13, 2021. Access Medical along with Drs. Girme and Veerla filed their answer to Richard's second amended complaint on September 17, 2021.

{¶6} On August 23, 2021, Richard filed a motion to compel discovery from Drs. Girme and Veerla. Drs. Girme and Veerla filed a memorandum in opposition to Richard's motion to compel discovery on August 30, 2021.

{¶7} On September 1, 2021, Richard filed a motion to compel discovery from the defendants and for sanctions. On September 24, 2021, the defendants filed

a memorandum in opposition to Richard's motion to compel discovery and for sanctions along with a motion for a protective order under Civ.R. 26(C). The defendants argued that the protective order is necessary to protect the documents from disclosure because they are confidential *and* proprietary. That is, the defendants claimed that "the documents at issue before the Court are confidential commercial information" due to "the nature and extent of OhioHealth's investment (both monetarily and vis-à-vis human capital)" as well as due to "the harm to OhioHealth if the disputed documents do not retain their confidentiality." (Doc. No. 36).

{¶8} As evidence in support of their protective order, the defendants submitted the affidavit of Dr. Marian K. Schuda, M.D. ("Dr. Schuda"), the medical director for patient services at Riverside Methodist Hospital and the system medical director for risk management at OhioHealth. In the affidavit, Dr. Schuda averred that she has "knowledge and information regarding" the disputed documents based on her roles with Ohio Health and asserted that "OhioHealth considers the Disputed Documents to be confidential and proprietary commercial information." (Doc. No. 36, Ex. C). Specifically, Dr. Schuda averred that

> [t]he information contained in the Disputed Documents outlines * * * the method and manner that OhioHealth (a) provides some of its medical care and treatment regarding certain medical conditions and issues; (b) utilizes certain medical equipment and other instrumentation; and (c) the organization structure and procedures of hospital-based committees and other like groups. The Disputed

-4-

> Documents contain information related to the professionalism, quality performance, and culture of OhioHealth, all of which is organic and specific to OhioHealth.

(*Id.*). Moreover, Dr. Schuda averred that "[t]he Disputed Documents are not publicly accessible"; "[a]ll OhioHealth staff as well as those credentialed with OhioHealth (whether employed or not are required to sign [a] Confidentiality Agreement"; OhioHealth "invested significant time, resources, human capital, and money into the creation, maintenance, and aforementioned availability of the Disputed Documents"; and "OhioHealth would suffer harm if the Disputed Documents are not maintained in a confidential manner" because "healthcare is a competitive industry." (*Id.*).

{¶9} On September 27, 2021, Richard filed a second motion to compel discovery from the defendants and for sanctions. On October 22, 2021, the defendants filed a memorandum in opposition to Richard's second motion to compel discovery and for sanctions. The trial court set the matter for a hearing.

{¶10} Following a hearing on December 1, 2021 (regarding Richard's motion to compel discovery and the defendants' motion for a protective order), the trial court's magistrate concluded that all of the requested documents (except for the peer-review policy) are discoverable and denied the defendants' request for a protective order. (Doc. No. 56). Importantly, the trial court's magistrate concluded that the defendants failed to meet their burden of establishing that "a clearly defined

and serious injury * * * will occur if [Richard] is given these polices without a protective order." (*Id.*). Further, the trial court's magistrate denied Richard's request for sanctions.

{¶11} On January 11, 2022, the defendants filed a motion for an extension of time to file objections to the magistrate's decision due to an alleged service failure. Nevertheless, the defendants filed a notice of appeal from the December 20, 2021 magistrate's decision in this court on January 18, 2022. However, this court dismissed the appeal for lack of a final and appealable order on March 9, 2022.

{¶12} Without being granted an extension of time, the defendants filed their objections to the magistrate's decision on March 17, 2022. Apparently recognizing such oversight, the defendants filed a "renewed" motion for an extension of time to file objections to the magistrate's decision the next day. On March 24, 2022, Richard filed a "motion to adopt magistrate's decision and overrule defendants' objections to magistrate's decision." (Doc. No. 69). On March 29, 2022, the defendants filed a motion to strike Richard's motion, arguing that Civ.R. 53 "does not provide or permit the filing of a motion to 'adopt' a magistrate's ruling." (Emphasis sic.) (Doc. No. 70). That same day, the defendants filed their reply in support of their objections to the magistrate's decision.

{¶13} On April 22, 2022, the trial court censured the defendants for obfuscating the Rules of Civil Procedure and its orders. Critically, the trial court

noted that the defendants have "a growing pattern of disregard for the Courts and their rulings" and detailed such delay tactics. (Doc. No. 73). Nevertheless, the trial court, determined "to further develop the record" for this court, ordered its magistrate to reconsider "the attorney fee issue" and "to re-evaluate the record for the Decision." (*Id.*).

{¶14} Consequently, on May 2, 2022, the trial court's magistrate issued a decision reconsidering the December 20, 2021 magistrate's decision, yet reached the same result. Specifically, the magistrate reviewed the disputed documents along with the evidence presented by the parties in their motions as well as the December 1, 2021 hearing. Based on the arguments presented by the defendants, the trial court's magistrate thoroughly analyzed the evidence against Ohio's trade-secrets law to determine if the defendants met their burden of proving that the documents in dispute constitute "a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way" as provided under Civ.R. 26(C)(7). Ultimately, the trial court's magistrate concluded that the defendants failed to demonstrate "a clearly defined and serious injury [that] will occur if [Richard] is given these policies without a protective order." (Doc. No. 74).

{¶15} On May 12, 2022, the defendants filed their objections to the magistrate's decision. Notwithstanding the arguments presented in their motion for

a protective order, the defendants objected to the magistrate's application of Ohio's trade-secrets analysis to reach the conclusion that they did not meet their burden of proving that the documents in dispute constitute "a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way" as provided under Civ.R. 26(C)(7). Even though the defendants argued that Ohio's trade-secrets analysis is inapplicable to their argument, they nevertheless objected to the weight that the magistrate applied to the trade-secrets factors.

{¶16} On July 8, 2022, the trial court issued its entry addressing the defendants' objections to the magistrate's decision in which it affirmed the magistrate's decision. (Doc. No. 83). Specifically, the trial court rejected the defendants' argument that the magistrate "should not have applied trade secret law." (*Id.*). Furthermore, the trial court announced that it was "not convinced the factors have the weight in favor of the protective order stated by OhioHealth" and agreed with the magistrate's analysis. (*Id.*).

{¶17} On July 12, 2022, Richard voluntarily dismissed his complaint against Dr. Cuevas without prejudice under Civ.R. 41(A)(1)(a).

{¶18} The defendants' filed their notice of appeal on July 26, 2022. They raise one assignment of error for our review.

**Assignment of Error**

**The Trial Court Erred in Denying OhioHealth's Motion for Protective Order, Because OhioHealth's Policies and Procedures Are Confidential and Proprietary [*Judgment Entry*, filed July 8, 2022].**

{¶19} In their assignment of error, the defendants argue that the trial court abused its discretion by adopting the magistrate's decision denying their motion for a protective order under Civ.R. 26(C). Specifically, the defendants argue that the trial court erroneously applied the trade-secrets analysis to deny their motion for a protective order. Instead, the defendants contend that the trial court should have carved a new analysis to apply to parties seeking a protective order for "confidential business information" under Civ.R. 26(C)(7). (Appellant's Brief at 10).

{¶20} Notwithstanding their argument in favor of a new standard, the defendants contend that there is not some competent, credible evidence supporting the trial court's decision that the documents in dispute did not constitute "a trade secret or other confidential research, development, or commercial information [which should] be disclosed only in a designated way" under Civ.R. 26(C)(7). In other words, the defendants contend that there is not some competent, credible evidence supporting the trial court's trade-secrets analysis.

*Standard of Review*

{¶21} "Generally, '[a]n appellate court reviews the trial court's decision to adopt, reject or modify the Magistrate's decision under an abuse of discretion

standard.'" *Costilla v. Weimerskirch*, 3d Dist. Hancock No. 5-20-12, 2021-Ohio-165, ¶ 8, quoting *Tewalt v. Peacock*, 3d Dist. Shelby No. 17-10-18, 2011-Ohio-1726, ¶ 31. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶22}** "'"When reviewing a trial court's disposition of objections to a magistrate's report,"' an appellate court "'will not reverse the trial court's decision if it is supported by some competent, credible evidence."'" *Davidson v. Hatcher*, 3d Dist. Allen No. 1-22-21, 2022-Ohio-4452, ¶ 29, quoting *McNeilan v. The Ohio Univ. Med. Ctr.*, 10th Dist. Franklin No. 10AP-472, 2011-Ohio-678, ¶ 20, quoting *O'Connor v. O'Connor*, 10th Dist. Franklin No. 07AP-248, 2008-Ohio-2276, ¶ 16. "'"If there is some competent, credible evidence in the record to support the trial court's decision, there is generally no basis for a reviewing court to find an abuse of discretion."'" *Id.* at ¶ 28, quoting *Depinet v. Norville*, 3d Dist. Wyandot No. 16-19-04, 2020-Ohio-3843, ¶ 11, quoting *In re Medure*, 7th Dist. Columbiana No. 01 CO 3, 2002-Ohio-5035, ¶ 13.

**{¶23}** However, when reviewing a party's objections to a magistrate's decision, "[t]he trial court may adopt, reject, or modify the magistrate's decision." *Sheehan v. Sheehan*, 3d Dist. Defiance No. 4-19-25, 2020-Ohio-5300, ¶ 11, citing Civ.R. 53(D)(4)(b). Significantly, when reviewing those objections, "the trial court

is 'not required to follow or accept the findings or recommendations of its magistrate.'" *Id.*, quoting *Stumpff v. Harris*, 2d Dist. Montgomery No. 21407, 2006-Ohio-4796, ¶ 16. "Instead, the trial court 'shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law.'" *Id.*, quoting Civ.R. 53(D)(4)(d), and citing *Stumpff* at ¶ 16. "Accordingly, the trial court reviews the magistrate's decision under a de novo standard of review," which is "'independent and without deference to the trial court's determination.'" *Id.*, citing *Stumpff* at ¶ 16; *Canter v. Garvin*, 3d Dist. Union No. 14-19-30, 2021-Ohio-99, ¶ 22, quoting *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25.

*Analysis*

**{¶24}** "The Rules of Civil Procedure provide liberal discovery provisions." *Lima Mem. Hosp. v. Almudallal*, 3d Dist. Allen No. 1-16-05, 2016-Ohio-5177, ¶ 55. Under Civ.R. 26(B)(1), the scope of discovery includes

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"Notwithstanding this wide scope of permissible discovery, trial courts are given broad discretion in the management of discovery." *Almudallal* at ¶ 55, citing *State ex rel. Daggett v. Gessaman*, 34 Ohio St.2d 55, 57 (1973).

{¶25} "Civ.R. 26(C) governs protective orders in Ohio." *Id.* at ¶ 56. The rule provides,

> Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place or the allocation of expenses; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

Civ.R. 26(C). Importantly, "'a motion for a protective order pursuant to Civ.R. 26(C) [is] * * * an exercise by the court of the discretion vested in it by Civ.R. 26(C).'" *Squiric v. Surgical Hosp. at Southwoods*, 7th Dist. Mahoning No. 20 MA 0015, 2020-Ohio-7026, ¶ 69, quoting *Ruwe v. Board of Twp. Trustees of Springfield Twp.*, 29 Ohio St.3d 59, 61 (1987). *See also Randall v. Cantwell Mach. Co.*, 10th

Dist. Franklin No. 12AP-786, 2013-Ohio-2744, ¶ 11 ("We review a trial court's denial of a protective order under an abuse-of-discretion standard.").

**{¶26}** "Where the party resisting discovery alleges the requested information is confidential or proprietary: 'Courts apply a balancing test in determining whether to grant protective orders, weighing the competing interests to be served by allowing discovery to proceed against the harm that may result.'" *Squiric* at ¶ 70, quoting *Eberhard Architects LLC v. Schottenstein, Zox & Dunn Co.*, 8th Dist. Cuyahoga No. 99867, 2013-Ohio-5319, ¶ 13. *See also Almudallal* at ¶ 56 ("'In determining whether to grant a protective order, a trial court must balance the competing interests to be served by allowing the discovery to proceed against any harm which may result.'"), quoting *Montrose Ford, Inc. v. Starn*, 147 Ohio App.3d 256, 259 (9th Dist.2002).

**{¶27}** In the May 2, 2022 decision, the trial court's magistrate denied the defendants' motion for a protective order after concluding that they failed to meet their burden of proving that the documents in dispute are either confidential or proprietary and that they would suffer a clearly defined and serious injury resulting from the documents' disclosure. Specifically, the trial court's magistrate found that (1) "most of the information is gathered from public, national sources, and associations which any hospital could obtain"; (2) "the policies are known within the OhioHealth System, but their employees are subject to non-disclosure

agreements"; (3) even though the defendants "testified to security measures in their systems and non-disclosure agreements with employees," "[c]ontrary evidence was [presented that] OhioHealth has given over similar policies in other cases without protective orders"; (4) because "[t]hese are also older policies, and would not be the current version of OhioHealth's policies even now, so the value of outdated policies is even less"; (5) "[a]lthough it was stated money and time was spent, it was not shown that there would be any significant loss or harm by denying the protective order" due to the age of the policies; and (6) "OhioHealth did not have a good answer to the additional time and expense it would take for other hospitals to acquire and duplicate the information." (Doc. No. 74).

{¶28} Significantly, the trial court's magistrate did not find Dr. Schuda's affidavit or her testimony at the December 1, 2021 hearing to be credible. In particular, the trial court's magistrate highlighted that Dr. Schuda averred in her affidavit to have "personal knowledge of the 'disputed documents,' while her in person testimony was that she had no personal knowledge of the documents that were in dispute in this case." (*Id.*).

{¶29} In its July 8, 2022 decision overruling the defendants' objections to the magistrate's decision, the trial court rejected the defendants' plea for it to carve out a new, and less cumbersome standard, which the defendants argued should be applicable to a category of documents they titled "confidential business

information." Furthermore, the trial court concluded that the magistrate appropriately applied the trade-secrets analysis based on the facts and arguments available in the record. Specifically, the trial court addressed that "OhioHealth believes the [trade-secrets] factors merit a different weight"; however, the trial court was "not convinced the factors have the weight in favor of the protective order stated by OhioHealth" and agreed "with the weight given by the Magistrate * * * ." (Doc. No. 83).

**{¶30}** The defendants begin by arguing that the trial court abused its discretion by denying its motion for a protective order under Civ.R. 26(C) because it should not have analyzed whether the documents in dispute constitute trade secrets under Ohio's Uniform Trade Secrets Act ("UTSA"). That is, the defendants wish to categorize the documents in dispute as "confidential business information," which they argue should be granted protection when "good cause" is shown. (Appellant's Brief at 10). In sum, the defendants argue that "[t]he trial court's error in this case is prejudicial, because the trade secret standard is more stringent—has several additional factors—than the good cause standard." (*Id.* at 11). In other words, the defendants urge this court to adopt an "any articulable reason" model to satisfy the good-cause standard.

**{¶31}** That is not the standard. *See Squiric* 2020-Ohio-7026, ¶ 82 (noting that "Civ.R. 26(C)(7) applies to a trade secret; this same subdivision also applies to

'other confidential * * * commercial information'"), quoting Civ.R. 26(C)(7). """"The burden of establishing good cause for a protective order rests with the movant."""" *Almudallal*, 2016-Ohio-5177, at ¶ 57, quoting *Stout v. Remetronix, Inc.*, 298 F.R.D. 531, 534 (S.D.Ohio 2014), quoting *Nix v. Sword*, 11 Fed.Appx. 498, 500 (6th Cir.2001). *See also Hance v. Cleveland Clinic*, 8th Dist. Cuyahoga No. 110129, 2021-Ohio-1493, ¶ 29 ("'In a discovery dispute, those asserting that the materials sought constitute trade secrets that are privileged from discovery bear the burden of establishing trade secret status.'"), quoting *Arnos v. MedCorp, Inc.*, 6th Dist. Lucas No. L-09-1248, 2010-Ohio-1883, ¶ 20. Importantly, "'[t]o demonstrate good cause, the movant "must articulate specific facts showing [a] clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements."'" *Almudallal* at ¶ 57, quoting *Stout* at 534, quoting *Nix* at 500.

**{¶32}** "Merely claiming the information is confidential is insufficient to sustain the burden." *Eberhard Architects*, 2013-Ohio-5319, at ¶ 14. Critically, "the producing party must state the harm it will suffer with 'sufficient particularity,' which requires "'specific demonstrations of fact, supported where possible by affidavits and concrete examples.'"" *Almudallal* at ¶ 57, quoting *Stout* at 535, quoting *Penn, LLC v. Prosper Business Dev. Corp.*, S.D.Ohio No. 2:10-cv-0993, 2012 WL 5948363, *4 (Nov. 28, 2012).

**{¶33}** In many instances, Ohio's courts of appeal apply Ohio's UTSA to determine whether information is confidential or proprietary and may be shielded from disclosure under Civ.R. 26(C)(7). *See Hance* at ¶ 24; *Squiric* at ¶ 56. *See also Arnos* at ¶ 27. Ohio's UTSA, which is codified under R.C. Chapter 1333, "'forbids the unauthorized disclosure or acquisition of trade secrets by providing specific civil remedies * * * ." *Hance* at ¶ 26, quoting *State ex rel. Besser v. Ohio State Univ.*, 87 Ohio St.3d 535, 539 (2000).

**{¶34}** A trade secrets includes "any information 'including * * * any business information or plans [and] financial information,' which meets the" statutory criteria under R.C. 1333.61(D)(1) and (2). *Squiric* at ¶ 73, quoting R.C. 1333.61(D). Those subsections require information to (1) derive "independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and (2) be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." R.C. 1333.61(D)(1), (2).

**{¶35}** The Supreme Court of Ohio established a six-factor test to consider when analyzing a trade-secrets claim:

> (1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4)

the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Hance* at ¶ 28, quoting *State ex rel. Plain Dealer v. Ohio Dept. of Ins.*, 80 Ohio St.3d 513, 524-525(1997), *superseded by statute on other grounds*, *Besser*.  When analyzing the factors, "[n]o single factor is dispositive.  *Id.  See also MNM & MAK Enterprises, LLC v. HIIT Fit Club, LLC*, 10th Dist. Franklin No. 18AP-980, 2019-Ohio-4017, ¶ 25 (acknowledging that the "factors are meant to assist courts and factfinders in their analysis of whether something is a 'trade secret'").

**{¶36}** "'Conclusory statements as to trade secret factors without supporting factual evidence are insufficient to meet the burden of establishing trade secret status.'"  *Hance* at ¶ 29, quoting *Arnos*, 2010-Ohio-1883, at ¶ 28.  That is, "'"[t]he mere presence of 'trade secrets' does not automatically entitle the producing party to [a] protective order.  The burden remains on the producing party to show that the * * * protection is warranted."'"  *Almudallal*, 2016-Ohio-5177, at ¶ 57, quoting *Stout* at 534-535, quoting *Penn*, 2012 WL 5948363, at *4.  Importantly, "the party claiming to possess a trade secret must demonstrate that it has taken 'some active steps to maintain its secrecy in order to enjoy presumptive trade secret status.'"  *Hance* at ¶ 29, quoting *Arnos* at ¶ 26.

**{¶37}** "'Whether information constitutes a trade secret is a question of fact.'" *Hance* at ¶ 25, quoting *In re Alternative Energy Rider Contained in the Tariffs of Ohio Edison Co.*, 153 Ohio St.3d 289, 2018-Ohio-229, ¶ 35. Consequently, courts of appeal review a trial court's trade-secrets determination for an abuse of discretion. *Id. See also Squiric*, 2020-Ohio-7026, at ¶ 62 (noting that a trial court's trade secrets decision is subject to an abuse of discretion review").

**{¶38}** We conclude that the trial court did not abuse its discretion by adopting the magistrate's decision denying the defendants' motion for a protective order under Civ.R. 26(C). Based on our review of the record, there is some competent, credible evidence that the documents in dispute are neither confidential nor proprietary. Indeed, there is some competent, credible evidence in the record supporting the conclusion that the defendants failed to meet their burden of establishing good cause for their requested protective order.

**{¶39}** As evidence in support of their protective order, the defendants relied on Dr. Schuda's affidavit as well as her testimony at the December 1, 2021 hearing. However, the evidence presented by the defendants failed to meet their burden of proving a clearly defined and serious injury that would result from the disclosure of the documents in dispute. *Accord Almudallal*, 2016-Ohio-5177, at ¶ 61 ("Where St. Rita's argument fails is that the affidavits fail to establish a specific showing of harm."). That is, Dr. Schuda's affidavit offers only conclusory statements without

any supporting evidence and her affidavit is belied by her testimony at the evidentiary hearing. *See Hance*, 2021-Ohio-1493, at ¶ 32 (noting that "[t]he Clinic's argument and Dr. Mroz's affidavit consist of merely conclusory statements that mimic the trade secret factors without including any supporting evidence or demonstration of active steps the Clinic has taken to preserve the information's secrecy"); *Arnos*, 2010-Ohio-1883, at ¶ 28; *Ro-Mai Industries v. Manning Properties*, 11th Dist. Portage No. 2009-P-0006, 2010-Ohio-2290, ¶ 28.

{¶40} In her affidavit, Dr. Schuda averred that "OhioHealth would suffer harm if the Disputed Documents are not maintained in a confidential manner" because "healthcare is a competitive industry." (Doc. No. 36, Ex. C). However, Dr. Schuda's affidavit fails to identify the clearly defined and serious injury that would result from disclosing the documents in dispute in this case. *See Almudallal* at ¶ 62 (concluding that "Lehman's affidavit also lacks specificity" because "Lehman failed to show a specific harm that would result from St. Rita's disclosing the information to Lima Memorial"). Imperatively, at the December 1, 2021 hearing, Dr. Schuda could *not articulate a single injury* that the defendants would incur by producing the documents in dispute without a protective order. (*See* Dec. 1, 2021 Tr. at 91).

{¶41} Moreover, notwithstanding Dr. Schuda's conclusory averments to the contrary in her affidavit, there is some competent, credible evidence in the record

that the defendants failed to meet their burden of establishing good cause for a protective order. That is, the defendants failed to offer evidence supporting their claim that the information is confidential and proprietary and failed to demonstrate any active steps that they have taken to preserve the information's secrecy. *See Hance* at ¶ 32. Indeed, Dr. Schuda testified that OhioHealth's code of conduct and ethics and compliance program are publicly available on its website. Even though it is not disputed that the *current* versions of the documents in dispute are maintained on an internal, password-protected database, evidence was presented that the information is not only available to employees of the defendants but that (prior versions of) the documents have been disclosed in similar cases without protective orders. Furthermore, contrary to her claim in her affidavit, Dr. Schuda testified that "the nurses in the * * * units taking care of patients" do *not* "sign confidentiality agreements specifically with respect to their nursing policies and procedures." (Dec. 1, 2021 Tr. at 95).

{¶42} In sum, based on the inconsistencies between her testimony and her affidavit, the trial court's magistrate concluded that Dr. Schuda was not credible. Decisively, Dr. Schuda testified that she did not review the specific documents at issue in this case despite claiming personal knowledge of them in her affidavit.

{¶43} Consequently, we conclude that there is some competent, credible evidence in the record that the defendants failed to meet their burden of establishing

-21-

good cause for their requested protective order. That is, that there is some competent credible evidence in the record that the defendants failed to identify the clearly defined and serious injury that would result from disclosing the documents in dispute in this case. Accordingly, the trial court did not abuse its discretion by adopting the magistrate's decision denying the defendants' motion for a protective order under Civ.R. 26(C).

{¶44} The defendants' assignment of error is overruled.

{¶45} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**MILLER, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**