O'Neill, J.
*289 I. SUMMARY
{¶ 1} In the case on appeal, the Public Utilities Commission ordered an audit to review renewable-energy-credit ("REC") purchases made by the FirstEnergy companies (Ohio Edison Company, Cleveland Electric Illuminating Company, and Toledo Edison Company [ (collectively, "FirstEnergy") ] ) under FirstEnergy's first electric-security plan ("ESP"). After the audit hearing, the commission found that certain purchases had not been prudent, and it ordered FirstEnergy to refund more than $43 million to ratepayers.
{¶ 2} The commission also granted several motions for protective orders, granting trade-secret protection to certain information related to FirstEnergy's purchase of RECs.
*290 {¶ 3} FirstEnergy filed an appeal in this court challenging the commission's adoption of the part of the audit findings regarding the more than $43 million disallowance. The Environmental Law and Policy Center ("ELPC") filed a cross-appeal challenging the protective orders. The Office of the Ohio Consumers' Counsel ("OCC") also cross-appealed, challenging the protective orders and the part of the commission's decision approving the remainder of FirstEnergy's renewable-energy costs.
{¶ 4} After review, we find that the parties have demonstrated two commission errors, one on appeal and one on cross-appeal. Therefore, we affirm the commission's order in part, reverse it in part, and remand the cause for further consideration.
*4 II. FACTS AND PROCEDURAL BACKGROUND
{¶ 5} R.C. 4928.64 requires electric-distribution utilities to generate a portion of the electricity supplied to retail customers from renewable-energy resources, such as solar and wind power. Under an earlier version of the statute, electric utilities were required to purchase at least half of their renewable energy from in-state suppliers.[1] See former R.C. 4928.64(B)(3), 2012 Am.Sub.S.B. No. 315. The law imposes annual goals or benchmarks that increase over time. R.C. 4928.64(B)(2). If an electric utility does not meet its benchmarks, the commission must impose a compliance payment on the utility. R.C. 4928.64(C)(2).
{¶ 6} Electric utilities may purchase such resources from suppliers through the procurement of RECs. See R.C. 4928.645. A REC is created for each megawatt hour of electricity generated by a renewable-energy resource. Ohio Adm.Code 4901:1-10-01(Z). Once electricity generated from a renewable-energy resource is delivered to the power grid, it becomes indistinguishable from electricity generated from traditional resources, such as coal or natural gas. A REC (an acronym also used for "renewable energy certificate") is a nontangible, tradable commodity that serves as a mechanism for utilities and regulators to track renewable-energy purchases. See United States Environmental Protection Agency, Green Power Partnership, Renewable Energy Certificates , https://www.epa.gov/greenpower/renewable-energy-certificates-recs (accessed Jan. 11, 2018).
{¶ 7} In 2009, the commission approved the first ESP for FirstEnergy. As part of that ESP, the commission approved FirstEnergy's plan to procure the necessary RECs from in-state and out-of-state suppliers for the period January 1, 2009, through May 31, 2011. The commission also approved a mechanism-an *291 "Alternative Energy Resource Rider" ("Rider AER")-for FirstEnergy to recover the costs associated with the REC-procurement plan. See In re Application of Ohio Edison Co., Pub. Util. Comm. Nos. 08-935-EL-SSO, 09-21-EL-ATA, 09-22-EL-AEM, and 09-23-EL-AAM, 2009 WL 874475, 2009 Ohio PUC LEXIS 279, *17-18 (Mar. 25, 2009). FirstEnergy then proceeded to request proposals, entertain and accept bids, and contract with various suppliers for the purchase of RECs in order to comply with R.C. 4928.64.
{¶ 8} Utilities are generally entitled to recover from retail customers the costs for buying renewable energy to comply with statutory benchmarks. See R.C. 4928.64(E). In the order approving FirstEnergy's first ESP, the commission approved a stipulation whereby FirstEnergy agreed that it would be able to recover "the prudently incurred costs" of its REC purchases under Rider AER. See 2009 WL 874475, 2009 Ohio PUC LEXIS 279 at *17.
{¶ 9} The commission initiated the underlying case to review the prudence of FirstEnergy's REC purchases from 2009 through 2011. See Pub. Util. Comm. No. 11-5201-EL-RDR, 2013 WL 4523583, 2013 Ohio PUC LEXIS 159, *3, 11 (Aug. 7, 2013). The commission selected Exeter Associates, Inc. ("Exeter"), to conduct the management and performance portions of the audit. Exeter filed its final audit report on Rider AER on August 15, 2012.
{¶ 10} Following the audit hearing, the commission found that most of FirstEnergy's purchases had been prudent, but the commission found that FirstEnergy *5 failed to act prudently in purchasing certain in-state, nonsolar RECs in August 2010 to meet FirstEnergy's renewable-energy benchmarks for 2011. Id. , at *61-69. As a result, the commission ordered FirstEnergy to credit customers' bills in the amount of $43,362,796.50. This amount was payable, with carrying costs, within 60 days of the commission's final order. Id. at *70, 86-87.
{¶ 11} Several parties filed applications for rehearing, and the commission ultimately issued an entry declining to rehear any aspect of its order. Commissioner Lynn Slaby dissented from that entry, stating: "Upon further consideration of this case, I would dissent from the majority. I am convinced that [ In re Application of ] Columbus S. Power Co. * * *, 128 Ohio St.3d 512, 2011-Ohio-1788 [947 N.E.2d 655], precludes us from refunding money to customers as the majority has done here." Pub. Util. Comm. No. 11-5201-EL-RDR at 39 (Dec. 18, 2013) (Slaby, Commr., dissenting).
{¶ 12} FirstEnergy filed this appeal raising a number of challenges to the commission's decision to disallow the more than $43 million in REC costs. OCC and ELPC filed cross-appeals challenging the commission's decisions to grant trade-secret status to certain information related to FirstEnergy's REC purchases.
*292 OCC also challenges the commission's finding that the majority of FirstEnergy's purchases were prudent.
{¶ 13} On February 10, 2014, we granted FirstEnergy's motion to stay the commission's refund order. 138 Ohio St.3d 1405, 2014-Ohio-429, 3 N.E.3d 207.
III. STANDARD OF REVIEW
{¶ 14} Under R.C. 4903.13, this court will reverse, vacate, or modify an order of the commission only when, upon consideration of the record, the court finds the order to be unlawful or unreasonable. Constellation NewEnergy, Inc. v. Pub. Util. Comm. , 104 Ohio St.3d 530, 2004-Ohio-6767, 820 N.E.2d 885, ¶ 50. This court has "complete and independent power of review as to all questions of law" in appeals from the commission. Ohio Edison Co. v. Pub. Util. Comm. , 78 Ohio St.3d 466, 469, 678 N.E.2d 922 (1997). We will not reverse or modify a commission decision as to questions of fact when the record contains sufficient probative evidence to show that the decision is not manifestly against the weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. Monongahela Power Co. v. Pub. Util. Comm. , 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29. The appellant bears the burden of demonstrating that the commission's decision is against the manifest weight of the evidence or is clearly unsupported by the record. Id.
IV. DISCUSSION
A. FirstEnergy's Appeal
1. FirstEnergy's Proposition of Law No. 1 : Whether the commission engaged in unlawful retroactive ratemaking
{¶ 15} FirstEnergy argues under its first proposition of law that the commission engaged in unlawful retroactive ratemaking when it ordered FirstEnergy to refund more than $43 million in REC costs. FirstEnergy's argument centers on the filed-rate doctrine, which provides that a utility may charge only the rates fixed by its current, commission-approved tariff, see R.C. 4905.32 ; Keco Industries, Inc. v. Cincinnati & Suburban Bell Tel. Co. , 166 Ohio St. 254, 257, 141 N.E.2d 465 (1957). And though the commission has the power to invalidate a rate schedule and fix new *6 rates, it may exercise this power prospectively only. See Ohio Util. Co. v. Pub. Util. Comm. , 58 Ohio St.2d 153, 157-158, 389 N.E.2d 483 (1979). The rule against retroactive ratemaking thus bars the commission from ordering a refund or otherwise adjusting current rates to make up for overcharges under previously recovered rates. See In re Application of Columbus S. Power Co. , 128 Ohio St.3d 512, 2011-Ohio-1788, 947 N.E.2d 655, at ¶ 15-16. Put *293 most simply, "[t]he rule against retroactive rates * * * also prohibits refunds." Id. at ¶ 15.
{¶ 16} The commission determined that under this court's decision in River Gas Co. v. Pub. Util. Comm. , 69 Ohio St.2d 509, 433 N.E.2d 568 (1982), disallowing REC costs under Rider AER does not constitute retroactive ratemaking. 2013 WL 4523583, Ohio PUC LEXIS 159 at *69-70. In disputing that conclusion, FirstEnergy maintains that because the commission had approved the rates charged under FirstEnergy's Rider AER tariff, this case is distinguishable from River Gas and the rule against retroactive ratemaking bars any refund or disallowance of REC costs already collected under these commission-approved rates.
{¶ 17} River Gas involved the commission's audit of a utility's charges under a Uniform Purchased Gas Adjustment Clause ("UPGA"), which was adopted under R.C. 4905.302. The UPGA contained a provision requiring that supplier refunds be taken into account in determining gas rates charged to customers. After an audit, the commission ordered the utility to refund to ratepayers a supplier refund that related to rates charged before the UPGA went into effect but that the utility did not receive until after the UPGA became effective. Id. at 509-511, 433 N.E.2d 568. This court affirmed, concluding that the commission's order did not violate the rule against retroactive ratemaking. Id. at 512-514, 433 N.E.2d 568. We held that because the variable rates charged under the UPGA were authorized by a " 'statutory plan which authorizes a utility to pass variable fuel costs directly to consumers,' " id. at 513, 433 N.E.2d 568, quoting Consumers' Counsel v. Pub. Util. Comm. , 57 Ohio St.2d 78, 82-83, 386 N.E.2d 1343 (1979), the commission's approval of the refund occurred pursuant to a process that did not constitute "ratemaking in its usual and customary sense," id. We agree with FirstEnergy that River Gas does not support the commission's determination in this case.
{¶ 18} In this case, the tariff language of Rider AER required FirstEnergy to request quarterly approval from the commission of the charges collected through the rider. As indicated by the tariff sheets here, the requested rates were to go into effect one month after the stated filing dates "unless otherwise ordered by" the commission. The record reflects that during the time period under review, FirstEnergy made these quarterly filings on behalf of its operating companies without objection from the commission and charged consumers pursuant to the filed tariff sheets. Under R.C. 4905.32, a public utility must charge its consumers consistently with the rate set forth in the schedule "filed with the public utilities commission which is in effect at the time." (Emphasis added.) Because FirstEnergy recovered REC costs under a "filed" rate schedule, the commission was prohibited from later ordering a disallowance or refund of those costs.
*294 R.C. 4905.32 ; Keco Industries , 166 Ohio St. at 257, 141 N.E.2d 465. Notwithstanding that FirstEnergy was entitled to recover only "prudently incurred costs," there can be no remedy in this case because the costs were already recovered. We have recognized that application of the no-refund *7 rule has been perceived as unfair and has even sometimes resulted in a windfall for a utility company. See In re Application of Columbus S. Power Co. , 128 Ohio St.3d 512, 2011-Ohio-1788, 947 N.E.2d 655, at ¶ 15-17 ; In re Application of Columbus Southern Power Co., 138 Ohio St.3d 448, 2014-Ohio-462, 8 N.E.3d 863, ¶ 56. But we have also recognized that it is the statutory scheme that requires this result and therefore, it is a matter for the General Assembly to remedy, not this court. In re Application of Columbus Southern Power Co. , 128 Ohio St.3d 512, 2011-Ohio-1788, 947 N.E.2d 655, at ¶ 17.
{¶ 19} FirstEnergy also asserts that the plain language of R.C. 4905.32 bars any refund in this case because Rider AER did not specify a refund process. We agree. R.C. 4905.32 provides that "[n]o public utility shall refund or remit directly or indirectly, any rate * * * or charge * * * except such as are specified in [its filed] schedule * * *."
{¶ 20} For the foregoing reasons, we find that the commission engaged in unlawful retroactive ratemaking when it ordered FirstEnergy to refund more than $43 million in previously recovered REC costs to ratepayers.
2. FirstEnergy's Proposition of Law No. 2 : Whether the commission's order is against the manifest weight of the evidence
{¶ 21} Under its second proposition of law, FirstEnergy challenges the commission's finding that FirstEnergy's management acted imprudently when it decided to purchase certain of the 2011 RECs under the August 2010 request for proposals ("RFP"), as opposed to reserving some RECs to be purchased in 2011. FirstEnergy alternatively argues that even if the commission's finding of imprudence is upheld, the amount of the disallowance-more than $43 million-is unreasonable.
{¶ 22} Our decision sustaining FirstEnergy's retroactive-ratemaking arguments makes it unnecessary to decide these arguments. Accordingly, we dismiss FirstEnergy's second proposition of law as moot. See In re Application of Columbus S. Power Co. , 138 Ohio St.3d 448, 2014-Ohio-462, 8 N.E.3d 863, at ¶ 39 (this court does not issue advisory opinions).
3. FirstEnergy's Proposition of Law No. 3 : Whether the commission unlawfully interpreted Ohio law
{¶ 23} FirstEnergy argues under its third proposition of law that the commission incorrectly construed the 3 percent cost-cap provision in R.C. 4928.64(C)(3) as mandatory. FirstEnergy maintains that the plain language of the statute gives *295 electric utilities discretion whether to invoke the cap. But contrary to FirstEnergy's argument, the commission made no such holding. This proposition of law is therefore without merit.
B. The Cross-Appeals of OCC and ELPC
1. OCC's Proposition of Law No. 1; ELPC's Proposition of Law Nos. 1 and 2 : Whether the commission erred in granting the motions for protective orders
{¶ 24} On cross-appeal, OCC and ELPC both challenge the commission's decision to grant trade-secret status to certain information related to FirstEnergy's in-state REC purchases. The information protected included REC-supplier information originally submitted during the competitive-bid auctions and the outcomes of those auctions, which was later included in Exeter's audit report. As will be discussed below, we find that the commission's trade-secret determination lacks record support.
a. Background on the commission's trade-secret rulings
{¶ 25} On August 15, 2012, the commission staff filed under seal a confidential *8 version of Exeter's audit report. FirstEnergy had entered into confidentiality agreements with REC suppliers to prevent the disclosure of certain supplier and pricing information submitted during the competitive-bid REC auctions. The confidential version of the audit report protected this information from public disclosure. A public version that redacted this information was filed the same day.
{¶ 26} Seven weeks later, on October 3, 2012, FirstEnergy filed its first motion for protective order. In this motion, FirstEnergy sought an order to continue to protect from public disclosure the information designated as confidential during the competitive-bid process, specifically the identity of REC suppliers that participated in the auctions and their specific bid prices. FirstEnergy argued that this REC-procurement data was trade-secret information that if disclosed would harm FirstEnergy's ability to conduct future auctions and compromise its ability to obtain competitive pricing in the REC market.
{¶ 27} During a November 20, 2012 prehearing conference, an attorney examiner granted FirstEnergy's motion, finding that the information sought to be protected qualified as trade secrets. Specifically, the attorney examiner exempted from public disclosure (1) the identity of renewable-energy suppliers that bid during the REC auctions, (2) the number of RECs bid, and (3) each supplier's bid prices. The attorney examiner, however, did not issue a follow-up entry memorializing the decision made during the prehearing conference.
{¶ 28} On December 31, 2012, FirstEnergy filed a second motion for protective order. In this motion, FirstEnergy sought to protect from public disclosure *296 certain "Confidential Draft Documents," which consisted of FirstEnergy's "unpublicized and confidential" comments to the prefiled draft of Exeter's report. According to FirstEnergy, these documents contained the same trade secrets as the unredacted, confidential version of Exeter's report filed on August 15, 2012.
{¶ 29} On February 14, 2013, a different attorney examiner issued an entry granting the second motion for protective order. The attorney examiner found that the information was the same trade-secret information that was protected at the November 20, 2012 prehearing conference.
{¶ 30} The commission affirmed the rulings of the attorney examiners on the motions with one exception.[2] 2013 WL 4523583, 2013 Ohio PUC LEXIS 159 at *26-27. The commission found that the attorney examiners' rulings wrongly protected the identity of FirstEnergy Solutions Corporation-an affiliate of FirstEnergy-as a successful bidder in the competitive auctions. According to the commission, the public version of Exeter's report disclosed the fact that FirstEnergy Solutions had bid to sell RECs to FirstEnergy and this information had been widely disseminated to the public. The commission also noted that its policy is to disclose the identities of winning bidders in competitive auctions within a reasonable time after auction results are announced to the public. Id. at *27. The commission, however, refused to disclose any specific information related to the bids of FirstEnergy Solutions, such as the quantity and price of its REC bids and whether specific *9 bids were accepted by FirstEnergy. Id. at *28.
b. Whether the commission's trade-secret findings are supported by the record
{¶ 31} OCC and ELPC argue that the commission erred when it found that certain REC-procurement information was entitled to trade-secret protection. R.C. 1333.61(D) defines "trade secret" as information that satisfies both of the following:
(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
*297 {¶ 32} Applying the trade-secret test set forth in R.C. 1333.61(D), the commission found "that the REC procurement data contains trade secret information." 2013 WL 4523583, 2013 Ohio PUC LEXIS 159 at *26.
{¶ 33} In their first propositions of law, OCC and ELPC both contend that the record does not support the commission's finding on the first prong of the test. OCC also challenges the commission's finding on the second prong as against the manifest weight of the evidence. For the reasons that follow, we find merit to cross-appellants' challenge regarding the economic-value prong, R.C. 1333.61(D)(1). However, we reject OCC's challenge regarding the reasonable-efforts prong, R.C. 1333.61(D)(2).
i. The commission cited no evidence and offered no explanation to support its finding that the information derived independent economic value from not being generally known
{¶ 34} OCC and ELPC both argue that the commission failed to cite evidence or offer an explanation in its order regarding how the sealed information-given its age and the changes in market conditions that have occurred over time-has retained its economic value in today's market.
{¶ 35} Whether information constitutes a trade secret is a question of fact. See State ex rel. Besser v. Ohio State Univ. , 89 Ohio St.3d 396, 401, 732 N.E.2d 373 (2000). FirstEnergy had claimed that the REC-procurement data had independent economic value because its release would cause competitive harm to FirstEnergy and REC suppliers by revealing bidding strategies and valuations, thereby discouraging bidders from participating in future auctions. Yet notably absent from the commission's order is mention of any evidence supporting that FirstEnergy or the REC suppliers would be competitively harmed by the release of this information. The attorney examiners' rulings granting trade-secret protection are likewise devoid of any mention of this type of evidence.
{¶ 36} Further, even if the order had mentioned supporting evidence, the commission (and the attorney examiners) failed to explain how this supplier information, if disclosed, would have affected future REC auctions. The commission's order reflected that market conditions had undergone significant changes and development since the REC-procurement data was submitted during the competitive auctions. Yet the commission never explained how this specific information retained independent economic value-particularly in relation to future auctions-in light of *10 those changes in market conditions. See Besser at 401, 732 N.E.2d 373.
{¶ 37} The commission added little to its analysis in its entry denying the parties' applications for rehearing. In relevant part, the commission stated that *298 "if this trade secret information was public, it could discourage REC suppliers' confidence in the market and impede the function of the REC market." Pub. Util. Comm. No. 11-5201-EL-RDR at 5 (Dec. 18, 2013). But once again, the commission cited no evidence to support its finding.
{¶ 38} The commission's failure to cite evidence and offer a reasoned explanation for its findings violated R.C. 4903.09, which requires the commission to file "findings of fact and written opinions setting forth the reasons prompting the decisions arrived at, based upon said findings of fact." Cross-appellants did all they needed to do to compel the commission to comply with this statute. They argued that the attorney examiners' protective orders lacked any mention of supporting evidence and explanation of economic value, particularly in light of the age of the information being protected. See 2013 WL 4523583, 2013 Ohio PUC LEXIS 159 at *16-19. And after the commission had summarily responded to those arguments in its initial order, OCC and ELPC complained in their applications for rehearing about the lack of any discussion of supporting evidence and the lack of an explanation of economic value. The commission essentially repeated what it had said in its initial order and again offered no evidence in support or explanation of its trade-secret finding.
{¶ 39} In sum, the commission's violation of R.C. 4903.09 is clear. While trade secrets may continue to be protected if the information retains some measure of value, the commission failed to show that to be the case here. Therefore, we reverse the commission's decision to grant trade-secret protection. On remand, the commission must either cite evidence and explain its order or publicly disclose the information that has been protected.
ii. The commission did not err in finding that FirstEnergy took reasonable efforts to maintain the secrecy of the REC-procurement data
{¶ 40} OCC also argues that the commission erred when it found that FirstEnergy took sufficient safeguards to protect the secrecy of REC-supplier identities and bid information. We find that FirstEnergy took reasonable steps to maintain the secrecy of the REC-procurement data, as required by R.C. 1333.61(D)(2).
{¶ 41} Before the commission issued its initial opinion and order deciding the merits of this case, FirstEnergy filed eight different motions for protective orders. FirstEnergy also had entered into protective agreements with REC suppliers and parties to the case. And the publicly filed documents subject to protective orders were, with one exception, redacted to remove confidential information. The exception was that the public version of Exeter's audit report failed to redact FirstEnergy Solutions-an affiliate of FirstEnergy-as one of the suppliers that submitted bids. As a result, the commission found that the identity *299 of FirstEnergy Solutions as a winning bidder was no longer entitled to trade-secret protection. See 2013 WL 4523583, 2013 Ohio PUC LEXIS 159 at *27-28.
{¶ 42} OCC argues that FirstEnergy's inaction following the naming of FirstEnergy Solutions in Exeter's report and the resulting dissemination of the identity of FirstEnergy Solutions to the public proves that FirstEnergy did not carry its burden under R.C. 1333.61(D)(2). Information is entitled to trade-secret status "only if the information is not generally *11 known or readily ascertainable to the public." State ex rel. Plain Dealer v. Ohio Dept. of Ins. , 80 Ohio St.3d 513, 529, 687 N.E.2d 661 (1997). According to OCC, the fact that this information remained public for 49 days before FirstEnergy filed a motion for protective order undercuts any finding that FirstEnergy adequately guarded the secrecy of the REC-procurement data. We disagree.
{¶ 43} A partial disclosure of confidential information does not foreclose the possibility of a trade secret. State ex rel. Perrea v. Cincinnati Pub. Schools , 123 Ohio St.3d 410, 2009-Ohio-4762, 916 N.E.2d 1049, ¶ 29 ; State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency , 88 Ohio St.3d 166, 174, 724 N.E.2d 411 (2000). There is nothing before us to suggest that the release of the identity of FirstEnergy Solutions opened the door to access other protected REC-procurement data. Knowing that FirstEnergy Solutions was a winning bidder provided no insight into the identity of other bidders, their bid prices, or whether their bids were accepted by FirstEnergy. Nor did the disclosure reveal other protected bid information specific to FirstEnergy Solutions, such as the price and quantity of REC bids and whether any were accepted. In short, despite FirstEnergy's delay in moving to protect certain information in the filed report, the commission did not err in finding that FirstEnergy complied with R.C. 1333.61(D)(2). Therefore, contrary to OCC's assertion, we find that FirstEnergy's delay in seeking to protect the identity of a single REC bidder does not prove that FirstEnergy failed to safeguard its claimed trade secrets.
iii. OCC's remaining attacks on the commission's "reasonable efforts" finding lack merit
{¶ 44} OCC points to two other instances in which FirstEnergy purportedly failed to protect trade-secret information as further evidence that FirstEnergy did not comply with R.C. 1333.61(D)(2). According to OCC, the first instance involves FirstEnergy's failure to protect from public disclosure unredacted information in Exeter's audit report stating that FirstEnergy had purchased some RECs at prices that were "more than 15 times the price of the applicable forty-five dollar Alternative Compliance Payment." The second instance concerns certain information contained in the prefiled, draft version of Exeter's audit report. According to OCC, the commission had sealed a recommendation contained *300 in the auditor's draft report regarding the amount of REC costs that should be disallowed. OCC maintains that FirstEnergy stood idle while the protected disallowed amount was publicly disclosed during the commission proceedings.
{¶ 45} Contrary to OCC's assertion, the record does not reflect that the commission granted trade-secret protection to either piece of information. It follows that FirstEnergy cannot be faulted for failing to protect information that was never protected to begin with.
{¶ 46} In the end, the commission correctly found that FirstEnergy had consistently sought confidential treatment of the REC-procurement data. Therefore, we reject OCC's challenge under R.C. 1333.61(D)(2). See Consumers' Counsel v. Pub. Util. Comm. , 121 Ohio St.3d 362, 2009-Ohio-604, 904 N.E.2d 853, ¶ 29.
c. Whether the commission gave proper consideration to policies of open government
{¶ 47} In its second proposition of law, ELPC argues that the commission failed to give proper consideration to R.C. 149.43, Ohio's Public Records Act. According to ELPC, the public's interest in knowing how FirstEnergy made REC purchases *12 "far outweighs any speculative interest in keeping that information secret." Given our decision to reverse the commission's determination regarding the trade-secret issue and to remand this case to the commission for further consideration of that issue, we find it unnecessary to determine whether the commission gave proper consideration to R.C. 149.43.
2. OCC's Proposition of Law Nos. 2 and 3 : Whether the commission erred when it presumed that FirstEnergy's expenditures were prudent and whether the commission misapplied the burden of proof
{¶ 48} Our decision sustaining FirstEnergy's retroactive-ratemaking arguments makes it unnecessary to consider OCC's second and third propositions of law. See In re Application of Columbus S. Power Co. , 138 Ohio St.3d 448, 2014-Ohio-462, 8 N.E.3d 863, at ¶ 39 (this court does not issue advisory opinions).
V. CONCLUSION
{¶ 49} For the foregoing reasons, the commission's order is affirmed in part and reversed in part and this cause is remanded for further consideration.
Order affirmed in part and reversed in part, and cause remanded.
O'Connor, C.J., and Fischer, J., concur.
Kennedy, J., concurs, with an opinion joined by O'Donnell and DeWine, JJ.
French, J., concurs in part and dissents in part, with an opinion.

This requirement was eliminated in 2014 Am.Sub.S.B. No. 310, effective September 12, 2014.

The commission also granted several other pending motions for protective orders. These motions sought to protect the same supplier information that was already protected, and the commission granted these motions solely on the authority of its prior determination that the information qualified as trade secrets. 2013 Ohio PUC LEXIS 159 at *28-32. Review of these rulings is not necessary to resolve the issues on appeal.