[Cite as *Doe v. Ohio State Univ.*, 2023-Ohio-4880.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| JOHN DOE | Case No. 2023-00498PQ |
| Requester | Special Master Todd Marti |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| OHIO STATE UNIVERSITY | |
| Respondent | |

**{¶1}** This matter is before the special master for a R.C. 2743.75(F) report and recommendation. He recommends that (1) Respondent be ordered to produce unredacted copies of all records responsive to Requester's pre-suit public records requests, except the portions of those records that relate to students; (2) Requester recover his filing fee and costs in this case and that Respondent bear the balance of the costs of this case; and (4) that all other relief be denied.

**I. Background.**

**{¶2}** Requester John Doe is a ticket reseller. Respondent Ohio State University ("OSU") sells season tickets to its football and basketball games to its faculty, staff, and donors. Doe made multiple requests to OSU for records containing information about faculty, staff, and donors who purchased those tickets. OSU denominated those requests as 23-721, 23-385, 23-959, 23-961, and 24-004. OSU provided some of that information, but withheld most of what was sought. *Complaint*, filed July 25, 2023, pp. 1,5, 6, 13, 14, 17, 19, 21-22, 28-29,31-32, 34.[1]

**{¶3}** Doe filed this case to obtain the withheld information. Mediation did not resolve the case, so a schedule was set pursuant to R.C. 2743.75(E)(3)(c) for OSU to file

---

[1] All references to specific pages of public filings in this case are to the pages of the PDF copies posted on the court's public docket. All references to specific pages of the *Sealed Documents*, filed November 17, 2023 ("*In Camera Documents*") are to the pages marked in OSU's internal pagination of that filing.

responsive materials for in camera review and for both parties to file evidence and memoranda supporting their positions. That schedule has run its course, and the case is ripe for decision. *Order Terminating Mediation*, entered November 3, 2023.

**II. Analysis**.

{¶4} OSU asserts that Doe's requests are unenforceable for three reasons. One is that the materials Doe seeks are not public records because they are not "records" as defined by R.C. 149.011(G). Another is that all the responsive materials are exempted from public record status because they are trade secrets. The third is that the portions of the records pertaining to students are exempted from public record status by the Family Educational Rights and Privacy Act ("FERPA").

**A. Most of the materials at issue are "records."**

{¶5} "'Public record' means *records* kept by any public office[.]" R.C. 149.43(A)(1) (Emphasis added). Materials are therefore only "public record[s]" if they are "record[s]." *State ex rel. Wilson-Simmons v. Lake Cty. Sheriff's Dept.*, 82 Ohio St.3d 37, 41, 693 N.E.2d 789 (1998).

{¶6} R.C. 149.011(G) defines a record as:

> any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.

That definition establishes three elements. They are (1) that the material in question is a document, device, or item, including an electronic record (2) that was created or received by or coming under the jurisdiction of a public office, (3) that serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office. *State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, ¶ 31. A requester has the burden of proving those elements. *State ex rel. O'Shea & Assocs. Co., L.P.A. v. Cuyahoga Metro. Hous. Auth.*, 131 Ohio St.3d 149, 2012-Ohio-115, 962 N.E.2d 297, ¶ 23.

{¶7} The materials at issue here are multiple spreadsheets collecting information about season ticketholders. They consist of columns setting forth each ticketholder's OSU identification number, relationship to OSU (faculty, staff, donor, student etc.), name, physical and email addresses, and in some cases seat locations and mobile phone numbers. *In Camera Documents*, pp. 1-244.

{¶8} Those materials unquestionably have the first two elements of a record. They are "documents" and copies of "electronic records" (spreadsheets). They are under OSU's "jurisdiction" because OSU was able to retrieve and file them in this case.

{¶9} Most of the materials have the third defining element because they "document" OSU's "operations, or other activities[.]" Information documenting a public office's contracts and other business dealings document the office's "operations" and "other activities." *State ex rel. Beacon Journal Publishing Co. v. Bodiker*, 134 Ohio App.3d 415, 422, 731 N.E.2d 245 (10th Dist.1999) ("contracts *** fall squarely within the definition of records, as those documents serve to document the operations and activities of the *** Office *** the contracts *** evidence official agreements"); *State ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 5th Dist. Tuscarawas No. 2013 AP 06 0024, 2014-Ohio-1222, ¶¶ 9, 11 (Information about an office's "contracts" and "leasing" document office's activities); 2002 Ohio Op. Atty. Gen. No. 30, at 2-201, 2-202, 2002 Ohio AG LEXIS 32, ** 7-10 (information about an office's "customers" document office's activities).

{¶10} OSU's dealings with ticketholders give rise to contracts and are business dealings. Doe provided unchallenged evidence that OSU offers season tickets on specific terms to employees and donors who accept those offers and make the requisite payments; that is the epitome of a contract. *Requester John Doe's Notice of Document Submission*, filed November 20, 2923 ("*Requester's Evidence*"), pp. 41-44, 70-85. Doe also presented unchallenged evidence that that the sale of a season ticket results in a "contract" or "license" between the ticketholder, OSU, and Ticketmaster, a company OSU works with to distribute tickets. *Id.,* pp. 50, 52, 63. OSU itself refers to ticketholders as "customers," evincing a business relationship between them. *The Ohio State University's Motion to Dismiss*, filed November 16, 2023 ("*MTD*"), at pp. 6-8; 11-14; 15; 16; 20 ¶ 8; 22

¶¶ 12, 14, 15; 23 ¶¶ 18, 19, 20. Portions of the disputed materials that shed light on those contracts and business dealings are therefore records.

{¶11} Most of the columns in the spreadsheets shed light on those matters:

- The columns describing the ticketholders' relationships to OSU document contract terms. Doe has presented unchallenged evidence that the terms upon which tickets are made available to faculty, staff, and donors vary based on their relationships to OSU, so this information documents the terms of OSU's contracts with various categories of ticketholders. *Requester's Evidence,* pp. 41-44, 70-85.

- The ticketholders' names document the persons OSU is contracting with. That is obvious from the face of the spreadsheet.

- The ticketholders' seat locations document a key aspect of OSU's contracts with its ticketholders: what it sold/licensed them.

- The ticketholders' email addresses document how OSU communicates with its customers, the ticketholders. Doe has presented evidence that OSU communicates with ticketholders through their email addresses, both with regard to forming the ticketholder/ticket issuer contract (i.e. applying for tickets) and after that contract has been formed. *Id.* at pp. 29, 41, 42, 62, 66, 71, 81, 85.

- Like the email addresses, ticketholders' mobile phone numbers document how OSU communicates with its customers to form contracts and perform its part of the contracts once they are formed. *Id.* at pp. 25, 26, 41, 42.

{¶12} Doe has not proven that some of the columns in the spreadsheets document OSU's contracts or business dealings. He has presented no evidence explaining how the column containing each ticketholder's OSU identification number reflects those matters. Those numbers seem to be the type of administrative detail that is outside of record status. *State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274, ¶ 25. Nor has he provided evidence connecting ticketholders' physical addresses to their contracts with OSU. To the contrary, his evidence indicates that ticket related interactions between OSU and its customers are exclusively electronic. Doe has not carried his burden of proof as to that information.

{¶13} The existence of the third element is a closer call because of cases holding that names and addresses of private citizens and public employees were not records. *Johnson*, *supra*; *O'Shea, supra; State ex rel. McCleary v. Roberts*, 88 Ohio St.3d 365, 725 N.E.2d 1144 (2000); *State ex rel. Beacon Journal Publishing Co. v. Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180; *State ex rel. Degroot v. Tilsley*, 128 Ohio St.3d 311, 2011-Ohio-231, 943 N.E.2d 1018; *Hicks v. Union Twp.*, 12th Dist. Clermont No. CA2022-10-057, 2023-Ohio-874. There are nonetheless three reasons why those cases do not control here.

{¶14} First, the cases do not establish a rule that private citizens' names and addresses can never be records. Indeed, one of those cases expressly recognized that. *Johnson*, 106 Ohio St.3d 160, ¶¶ 39, 41. Other cases and authorities have reached the same conclusion. *Harper*, 2014-Ohio-1222, ¶ 9; *Brown v. City of Cleveland*, Ct. of Cl. No. 2018-01426PQ, 2019-Ohio-1819, ¶ 11, adopted, 2019-Ohio-2627; 2004 Ohio Op. Atty. Gen. No. 45*,* at 2-388, 2004 Ohio AG LEXIS 47, * 10 ("the fact that information is personal in nature (e.g., names and addresses) is not, in itself, determinative of whether the information is or is not a public record"); 2014 Ohio Op. Atty. Gen. No. 29, at 8, n. 8, 2014 Ohio AG LEXIS 28, **21.

{¶15} Second, private parties' contact information can be records if it sheds light on government activity. The dispositive question is whether that information "sheds light on an agency's performance of its statutory duties," "the conduct of any Government agency or official," or "the internal workings of governmental agencies." *McCleary*, 88 Ohio St.3d at 368, 369. Accord, *Bond*, 98 Ohio St.3d 146, ¶ 11; *Johnson*, 106 Ohio St.3d 160, ¶¶ 27, 40; 2004 Ohio Atty Gen. Op. No. 45, at 2-391, 2004 Ohio AG LEXIS 47, *18; 2014 Ohio Op. Atty. Gen. No. 29, at 4, 2014 Ohio AG LEXIS 28, **8.  That Information is given record status if it does shed light on those matters. For example, customer contact information has been treated as a record when it illuminates public offices' interactions with their customers. *Harper*, 2014-Ohio-1222, ¶¶ 11, 12; 2002 Ohio Op. Atty. Gen. No. 30, at 2-201, 2-202, 2002 Ohio AG LEXIS 32, ** 8-10. The evidence here establishes that the information bulleted above could indeed shed such light on such matters for the reasons explained in those bullets.

{¶16} Third, other precedents require that any doubt be resolved in favor of finding that the materials are records. The Supreme Court has held that the open-ended language of R.C. 149.011(G) is a direction for "expansion rather than constriction[.]" *Kish v. City of Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 20. Consistent with that directive, the courts apply the definition according to its "great breadth" and "expansive scope," and resolve doubts in favor of inclusion. *Id.*; *State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, ¶ 30; *State ex rel. Cincinnati Post v. Schweikert*, 38 Ohio St.3d 170, 173, 527 N.E.2d 1230 (1988).  Those precedents require that any doubt about whether these materials are records be resolved in favor of record status.

**B. OSU has not met its burden of proving that the records are trade secrets**.

{¶17} Records disclosing trade secrets are exempted from public record status by R.C. 149.43(A)(1)(v)'s "prohibited by state or federal law" provisions. *State ex rel. Seballos v. School Emples. Retirement Sys.*, 70 Ohio St.3d 667, 670, 640 N.E.2d 829 (1994).  Courts determine trade secret claims by considering:

> "(1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information,  and (6) the amount of time and expense it would take for others to acquire and duplicate the information." *State ex rel. Plain Dealer v. Ohio Dep't of Ins.*, 80 Ohio St.3d 513, 524-525, 687 N.E.2d 661 (1997).

{¶18} "The question whether a particular [information] is a trade secret is a question of fact[.]" *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 707 N.E.2d 853 (1999), paragraph six of the syllabus. The party asserting trade secret protection has the burden of proving facts establishing it. *Plain Dealer*, 80 Ohio St.3d. at 525.  That is a heavy burden, under both public records and trade secret law.

{¶19} Public records law provides that a public office asserting an exemption from its duty to provide access to public records bears "the burden of production *** to plead and prove facts clearly establishing the applicability of the exemption." *Welsh-Huggins v.*

*Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 27 (internal punctuation omitted). See also, *id.* at ¶¶ 35, 54. An office "does not meet this burden if it has not proven that the requested records fall squarely within the exception," and the courts "resolve any doubt in favor of disclosure." *Id.* at ¶¶ 27, 63. See also *id.* at ¶¶ 50, 63.   That burden must be carried with "competent, admissible evidence[.]" *Id.* at ¶¶ 53, 77. And importantly here, "[u]nsupported conclusory statements in an affidavit are insufficient." *Id.* at 35. Instead, the office must explain "*how*" the disputed record fits within the exemption. *Id.* at ¶¶ 55, 59 (Emphasis sic.).

{¶20} Trade secret law similarly requires more than conclusory statements. *State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 400, 401, 402, 404-405; 732 N.E.2d 373 (2000); *Arnos v. MedCorp, Inc.*, 6th Dist. Lucas No. L-09-1248, 2010-Ohio-1883, ¶¶ 17, 28. "Conclusory statements as to trade secret factors *without supporting factual evidence* are insufficient to meet the burden of establishing trade secret status." *Hance v. Cleveland Clinic*, 2021-Ohio-1493, 172 N.E.3d 478 (8th Dist.), ¶ 29 (Emphasis added). See also *In re Alternative Energy Rider Contained in the Tariffs of Ohio Edison Co.*, 153 Ohio St.3d 289, 2018-Ohio-229, 106 N.E.3d 1, ¶¶ 35, 37, 38 (trade secret analysis fatally flawed by lack of supporting evidence). Affidavits that "consist of merely conclusory statements that mimic the trade secret factors without including any supporting evidence or demonstration of active steps" will not meet the proponent's burden. *Hance*, 2021-Ohio-1493, ¶ 32.

{¶21} OSU's evidence falls short of those standards in two important respects.

**1. OSU's evidence does not provide sufficient proof that the information at issue has been kept secret.**

{¶22} Keeping the disputed information secret is essential to trade secret status. "Once material has been publicly disclosed, it loses any status it ever had as a trade secret." *State ex rel. Rea v. Ohio Dept. of Edn.*, 81 Ohio St.3d 527, 532, 692 N.E.2d 596 (1998). Because of that, a "possessor of a potential trade secret must take some active steps to maintain its secrecy in order to enjoy presumptive trade secret status[.]" *Columbus Bookkeeping & Business Servs. v. Ohio State Bookkeeping, LLC*, 10th Dist. Franklin No. 11AP-227, 2011-Ohio-6877 (Dec. 30, 2011), ¶ 19; *Thermodyn Corp. v. 3M*

*Co.*, 593 F.Supp.2d 972, 986 (N.D.Ohio 2008). OSU's evidence on this point falls short on two levels.

**{¶23}** First, it is conclusory. It consists of several statements in an affidavit asserting, without supporting detail, that to the best of one official's knowledge, the "OSU customer ticketholder lists are not known outside the university other than by select Ticketmaster personnel who service the account," and that "is impossible for others to acquire and duplicate the information unless they have obtained the lists fraudulently." *MTD*, at pp. 22, 23, ¶¶ 14, 21. The closest OSU comes to providing particular facts is a 15-year-old letter declining a request for similar information, but that letter is both too generic and too old to provide the missing details. *Id.* at pp. 27-28.  See *In re Alternative Energy Rider Contained in the Tariffs of Ohio Edison Co.*, 153 Ohio St.3d 289, ¶¶ 34, 36 (discounting the value of dated information in trade secret analysis); *Salemi v. Cleveland Metroparks*, 145 Ohio St.3d 408, 2016-Ohio-1192, 49 N.E.3d 1296, ¶ 28 (same). That falls well short of the detail other courts have found sufficient to prove this factor. See e.g*. Valco Cincinnati, Inc. v. N & D Machining Serv., Inc.*, 24 Ohio St.3d 41, 47; 492 N.E.2d 814 (1986) (describing evidence sufficient to prove secrecy); *State ex rel. Perrea v. Cincinnati Pub. Schools*, 123 Ohio St.3d 410, 2009-Ohio-4762, 916 N.E.2d 1049, ¶ 27 (same). In sum, OSU's submissions on this point do not meet the public records law requirement that it explain "*how*" it has maintained secrecy, an essential element of the exemption it seeks. *Welsh-Huggins*, ¶¶ 55, 59 (emphasis sic).   Those submissions are also inadequate under trade secret law because they "consist of merely conclusory statements that mimic the trade secret factors without including any supporting evidence or demonstration of active steps[.]" *Hance v. Cleveland Clinic*, 2021-Ohio-1493, 172 N.E.3d 478 (8th Dist.), ¶ 32.

**{¶24}** Second, the record contains unchallenged evidence that OSU has disclosed the information to third parties. A trade secret claim fails if the information has been disclosed to third parties without limiting those parties' use of the information. *R & R Plastics v. F.E. Myers Co.*, 92 Ohio App.3d 789, 802, 637 N.E.2d 332 (6th Dist.1993) ("an owner's disclosure to potential or actual customers, absent a confidential agreement or understanding, will destroy any protection of that information as a trade secret");

*Cincinnati Enquirer v. Hamilton Cty. Bd. of Commrs.*, Ct. of Cl. No. 2019-00789PQ, 2020-Ohio-4856, ¶¶ 45, 47, adopted, 2020-Ohio-5281; *Buduson v. City of Cleveland*, Ct. of Cl. No. 2018-00300PQ, 2019-Ohio-963, ¶ 29, adopted 2019-Ohio-1610; *Jedson Eng., Inc. v. Spirit Constr. Servs.*, 720 F.Supp.2d 904, 921-922 (S.D.Ohio 2010) OSU's submissions acknowledge that it disclosed the information at issue to Ticketmaster, but OSU has provided no evidence that it did so under conditions restricting Ticketmaster's use of the information. *MTD*, at pp. 6; 8; 13; 22 ¶¶ 12, 14; 23 ¶ 21. Further, Doe's submissions indicate that Ticketmaster makes broad use of that information, including sharing it with other companies. *Requester's Evidence*, at pp. 47, 51, 52, 54. In short, OSU has acknowledged that it shared the information with a third party, it has not described any restrictions on the third party's use of the information, and there is significant evidence that the third party shares it with other companies. That alone precludes trade secret protection. *Jedson*, 720 F.Supp.2d at 921-922.

### 2. OSU's evidence does not sufficiently describe the amount of effort or money expended in obtaining and developing the information.

{¶25} The essential purpose of a trade secret is to protect the investment the holder has made in developing the protected information. *Fred Siegel Co.*, 85 Ohio St.3d at 183. The cases therefore require a trade secret proponent to quantify the cost of creating the information it seeks to protect. They find conclusory assertions on this point insufficient. *Cincinnati Enquirer v. Hamilton Cty. Bd. of Commrs.*, Ct. of Cl. No. 2019-00789PQ, 2020-Ohio-4856, ¶ 54, adopted, 2020-Ohio-5281 (no quantification); *Wengerd v. E. Wayne Fire Dist.*, Ct. of Cl. No. 2017-00426-PQ, 2017-Ohio-8951, ¶ 26, adopted December 11, 2017 (same); *Sheil v. Horton*, Ct. of Cl. No. 2017-00772PQ, 2018-Ohio-1720, ¶¶ 52, 53, adopted 2018-Ohio-2355, Aff'd in rel. part *Sheil v. Horton*, 2018-Ohio-5240, 117 N.E.3d 194 (8th Dist.) (same); *Hance*, 2021-Ohio-1493, ¶¶ 31, 32 (conclusory assertion).

OSU's submissions on this point consist of the following:

> "Over the course of decades, the university has spent significant time, effort and dollars in soliciting, entertaining and servicing donors to generate members of our customer ticket lists and Buckeye Club. *** The effort that has gone into cultivating and building these sometimes-lifelong relationships has been significant [.]" *MTD*, p. 23, ¶ 20.

{¶26} That falls short in two respects. It only addresses *part* of the information requested, that related to donors. It says nothing about the faculty and staff information Doe seeks. And even as to donors, it does not quantify the resources expended to create that information, but only makes the type of conclusory statement other cases have found insufficient. See particularly, *Hance*, 2021-Ohio-1493, ¶¶ 31, 32.

***

{¶27} In short, OSU has not "clearly establish[ed]" that the information fits "squarely within" the bounds of the trade secret exemption it asserts. *Welsh-Huggins*, ¶ 27. The special master therefore recommends that the court reject this claimed exemption.

**C. OSU has proven that portions of the records are protected by FERPA.**

{¶28} 20 U.C.C. § 1232g, the Family Educational Rights and Privacy Act ("FERPA"), prohibits federally funded "educational institutions" from releasing "education records" without students' consent. It is a law that prohibits the release of otherwise public records within the meaning of R.C. 149.43(A)(1)(v). *State ex rel. ESPN, Inc. v. Ohio State Univ.*, 132 Ohio St.3d 212, 2012-Ohio-2690, 970 N.E.2d 939, ¶ 25. The public record and the record in this case establish that FERPA prohibits releasing portions of the materials at issue here.

{¶29} The public record establishes that OSU is covered by FERPA. Its most recent state audit reflects that OSU receives federal funding. Ohio Auditor of State, *Financial Statements as of and for the years ended June 30, 2022 and 2021 and Report on Federal Financial Assistance Programs in Accordance with the OMB Uniform Guidance for the year ended June 30, 2022,* (May 23, 2023),[https://ohioauditor.gov/auditsearch/Reports/2023/Ohio_State_University_Franklin _22-Franklin_FINAL.pdf](https://ohioauditor.gov/auditsearch/Reports/2023/Ohio_State_University_Franklin_22-Franklin_FINAL.pdf) (accessed December 20, 2023), p. 28. The special master takes judicial notice of that fact pursuant to *State ex rel. Pike Cty. Convention & Visitor's Bur. v. Pike Cty. Bd. of Commrs.*, 165 Ohio St.3d 590, 2021-Ohio-4031, 180 N.E.3d 1135, ¶ 3, n. 2. OSU is plainly an "educational institution." It is therefore required to comply with FERPA.

{¶30} The record here establishes that portions of the materials are "education records." "For purposes of FERPA, the term 'education records' means 'those records,

files, documents, and other materials which—(i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution.'" *ESPN*, 132 Ohio St.3d 212, ¶ 27 (quoting 20 U.S.C. § 1232g(a)(4)(A)). A review of the *In Camera Records* reveals that the disputed materials are "records, files, documents, and other materials[.]" That is evident from the materials themselves; no extrinsic evidence of this element is needed. See *Welsh-Huggins*, 163 Ohio St.3d 337, at ¶¶ 30, 35, 50, 53. A review of the records themselves similarly reveals that portions "contain information directly related to" students, disclosing that certain students are season ticket holders. *In Camera Records*, pp. 82-87, rows 5222-5581, and pp. 232-233, rows 4907-4956. The fact that the records are "maintained by" OSU is established by the fact that OSU was able to file them here.  FERPA therefore prohibits OSU from releasing those portions of the records.

{¶31} In sum, FERPA protects the information recorded at pp. 82-87, rows 5222-5581, and pp. 232-233, rows 4907-4956 of the *In Camera Records*. The special master therefore recommends that OSU not be required to produce those portions of the *In Camera Records,* or any portions of other responsive records that have those characteristics.

### D. Requester is entitled to recover his filing fee and costs. Respondent should bear the balance of the costs.

{¶32} R.C. 2743.75(F)(3)(b) provides that the "aggrieved person shall be entitled to recover from the public office or person responsible for the public records the amount of the filing fee of twenty-five dollars and any other costs associated with the action[.]" Doe was aggrieved by the OSU's failure to produce records responsive to his requests. He is therefore entitled to recover his filing fee and costs. OSU should bear the balance of the costs.

### E. All other relief should be denied.

{¶33} Doe and OSU seek several types of relief that are either not warranted or not available here.

{¶34} Doe seeks to strike OSU's reply in support of its *MTD* and sanctions pursuant to R.C. 2323.51(A)(2)(i) or (ii) because the reply brief was filed in violation of R.C.

2743.75(E)(2). *Motion to Strike and for Sanctions*, filed December 12, 2023. His motion to strike should be denied because he was not prejudiced by the filing. *Lewis v. Horace Mann Ins. Co.*, 8th Dist. Cuyahoga No. 82530, 2003-Ohio-5248, ¶ 42 (motions to strike "are ordinarily not granted unless" the disputed material "is clearly prejudicial"). There is no prejudice to Doe because the special master recommends that the issues addressed in the unauthorized filing be resolved in Doe's favor. Sanctions are not appropriate because OSU's filing does not "obviously" have the improper purpose required by R.C. 2323.51(A)(2)(i) and because the arguments OSU made in its filing were not so far afield as to trigger R.C. 2323.51(A)(2)(ii).

{¶35} Doe's requests for damages and attorney's fees should be denied because those types of relief are not available in R.C. 2743.75 cases. *Assn. of Cleveland Fire Fighters IAFF Local 93 v. City of Cleveland*, Ct. of Cl. No. 2020-00103PQ, 2020-Ohio-4550, ¶ 10, adopted 2020-Ohio-4902.

{¶36} OSU seems to seek a ruling on its obligations regarding a public records request made after this case was filed. *MTD*, pp. 5-6, 22-21 ¶ 10. The courts do not rule on records requests made after the enforcement action has been filed. *State ex rel. Strothers v. Keenon*, 2016-Ohio-405, 59 N.E.3d 556, ¶ 10 (8th Dist.).

## III. Conclusion.

In light of the foregoing, the special master recommends that:

- Respondent be ordered to produce unredacted copies of all records responsive to the public records requests Respondent denominated as 23-721, 23-385, 23-959, 23-961, and 24-004, except for pp. 82-87, rows 5222-5581, and pp. 232-233, rows 4907-4956 of the *In Camera Records* and all other portions of other records that have those characteristics that are responsive to Requester's requests. OSU should also be permitted to redact information about ticketholders' OSU identification numbers and physical addresses.
- Requester recover his filing fee and costs in this case and that Respondent bear the balance of the costs of this case; and
- All other relief be denied.

{¶37} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

_____
TODD MARTI
Special Master

**Filed December 21, 2023**
**Sent to S.C. Reporter 1/4/24**